ZEHMER, Judge.
The appealed workers’ compensation order denied the claim of Pedro Luis Perez (claimant) for future attendant care services and attendant services performed by claimant’s wife since August 1981. Penn-suco Cement & Aggregates and Insurance Company of North America (employer and carrier) contend that attendant care is not needed and that, alternatively, the services rendered by Mrs. Perez are not compensa-ble because they were gratuitous in nature. We reverse.
Claimant is a victim of manganese intoxication poisoning sustained while employed as a welder by Building Materials, Inc., and Pennsuco. The date of accident was determined to be April 5, 1972. As a victim of this poisoning, claimant has suffered both neurological impairment and psychiatric disorders. Manganese poisoning is characterized by difficulty in walking, alterations in gait and balance, speech disorder, clumsiness of movement, and loss of memory. Claimant’s physical disorders have been compounded by bouts of acute and chronic depressive reaction which required hospi-
talization in 1982, approximately nine years after the onset of the manganese poisoning.
In 1975 claimant was determined to be permanently and totally disabled and the employer and carrier were ordered to furnish him permanent total disability benefits, “such remedial medical and hospital care as the nature of his injuries requires and as the process of recovery may necessitate,” and “to pay the claimant’s medical, hospital, drug and doctor bills incurred ... for the medical care, treatment and attendance incurred by the claimant ... and to all of the other doctors and hospitals that may have rendered the claimant the care and treatment for this compensable condition and the sequelae arising therefrom” (2 Supp.R., p. 3).[1]
Following claimant’s discharge from the hospital in 1982, his wife continued to provide attendant care. She eventually sold her interest in a beauty salon so that she could stay home and provide her husband the care he required because she was unable to devote time to her business and also attend to her husband adequately. Mrs. Perez helps claimant out of bed, takes him to the bathroom, dresses him, feeds him, prepares lunch in addition to other meals, walks with him (and stays beside him because, otherwise, he might fall down), helps him exercise on the cycle, as recommended by his doctor, talks to and entertains him in order to keep him from going to sleep and to prevent his becoming reclusive, and takes him to the supermarket, restaurants, etc. Claimant fears going out alone because he feels he will fall.
Claimant has shown that as early as 1979 attendant care twenty-four hours a day was prescribed by Dr. Penalvar, a specialist in manganese poisoning (R. 45, 2 Supp.R., p. 17), and Dr. Penalvar recommended physiotherapy in 1981 (R. 287). Dr. Valdez-Castillo, a psychiatrist called in for consultation during claimant’s 1982 hospitalization, stated that if claimant’s mental condition was the same at the hearing as it was when he last examined claimant in *295 1982, an eight-hour shift of daily attendant care was required. Dr. Valdez-Castillo also prescribed psychotherapy in 1982 (R. 124). Dr. Hirschman, one of claimant’s treating physicians, testified that although he felt it would not be therapeutically advantageous for claimant to be provided full-time attendant care, claimant would benefit from having such care for eight-hour shifts at least three days a week. Dr. Hirschman commented that one providing such care would accompany claimant to prescribed psychotherapy or physical therapy and activities prescribed as therapeutic in general. Dr. Penalvar, who had prescribed attendant care in 1979, testified at the time of the hearing that he felt claimant did not require full-time attendant care for physical needs but he specifically deferred to Dr. Valdez-Castillo for determination of Perez’s psychological or emotional needs (R. 52).[2]
The record reflects without dispute, that as early as 1979 the carrier was made aware by Dr. Penalvar of claimant’s need for attendant care. In 1982 physical therapy for claimant was prescribed by a treating physician, Dr. Hirschman, (R. 241), and claimant responded well while hospitalized. Further psychotherapy was prescribed (R. 291), but the record is not clear whether the carrier ever authorized such treatment. Claimant, permanently and totally disabled since 1975, has remained in need of treatment and without attendant care except for the services provided by Mrs. Perez.
Despite acknowledgment of claimant’s chronic depressive mental state by three physicians and the recommendation by Dr. Valdez-Castillo that claimant be provided attendant care, the deputy commissioner found that:
[T]he employee has not been and was not, at the time of the hearing, in need of attendant care by the wife. I find that such care and attendance as has been rendered is neither remedial treatment care or attendance, under the direction and supervision of a physician nor required by the nature of the injury.
(R. 330). The record does not contain competent, substantial evidence to support this conclusion; instead, it seems to be in conflict with the testimony, including that specifically accepted by the deputy, because the deputy commissioner further commented:
Note has been taken of Dr. Hirschman’s opinion that the employee might benefit by obtaining the services of a trained “facilitator” to get him out of the house and to a qualified physical therapist (something like a top-flight orderly). This is the type of service offered by many rehabilitation vendors and should be considered by the parties. The undersigned assumes that since the authorized doctor has made the suggestion, the carrier will provide the same upon request by the employee.
(R. 330). Dr. Hirschman recommended that claimant be provided a “top flight male orderly” outside the home environment and that claimant’s progress be monitored by Dr. Valdez-Castillo. Dr. Hirsch-man stated that claimant needs help with dressing and undressing and needed encouragement just to get out of bed in the morning. Use of the term “facilitator” apparently stems from Dr. Hirschman’s testimony that “I did endorse a facilitator, which others might call an attendant, but I prefer to call it a facilitator, in a therapeutic program three times a week to get claimant out of the house to do those activities which his treating doctors would order.” (R. 283). Thus, the deputy commissioner acknowledged, on the one hand, claimant’s need for a “facilitator” or attendant but, on the other hand, denied claimant’s need for attendant care, even though it is clear from the testimony that the services expected of the facilitator have been provided by Mrs. Perez.
Section 440.13, Florida Statutes (1971), states that the employer shall pro *296 vide remedial treatment, care, and attendance for such period as the nature of the injury or process of recovery may require. Attendant care is included in the requirements under this section. Where a family member provides ordinary services to a .claimant, the presumption is that they are gratuitous in nature and not compensable. Pan American World Airways, Inc. v. Weaver, 226 So.2d 801 (Fla.1969); Sheraton Bal Harbour v. Platis, 447 So.2d 987 (Fla. 1st DCA 1984). When the services rendered, however, go beyond ordinary household duties such as shopping and cooking, benefits for attendant care may be awarded. Extraordinary services include bathing, dressing, administering medication, and assisting with sanitary functions. Don Harris Plumbing Co. v. Henderson, 454 So.2d 745 (Fla. 1st DCA 1984); Sealey Mattress Co. and Hartford Insurance Co. v. Spencer Gause, 466 So.2d 399 (Fla. 1st DCA 1985). Mrs. Perez has provided claimant with these and other services that surpass the ordinary services generally expected of and rendered by a family member.
Section 440.13, Florida Statutes (1971), provides that an employee shall not be entitled to recover any amount personally expended for remedial treatment, care, or attendance unless the employee has requested the employer to provide such treatment or services and the employer has failed to do so, or unless the nature of the injury requires such treatment, nursing, attendant care, or services and the employer, having knowledge thereof, neglected to provide the same. Even if not requested, the employer and carrier are liable for attendant care services where the nature of the injury requires such services and the employer, having knowledge of the injury, fails to provide attendant care. Walt Disney World Co. v. Harrison, 443 So.2d 389 (Fla. 1st DCA 1983); City of Leesburg v. Balliet, 413 So.2d 860 (Fla. 1st DCA 1982). There is evidence in the record that claimant has in fact requested these services and that the employer and carrier, with full knowledge of claimant’s need for such services since at least 1979, has failed or refused to provide them.
We reverse the appealed order for lack of competent, substantial evidence in the record to support the deputy’s finding that claimant is not in need of attendant care. The deputy erred in concluding that many of the wife’s services for claimant do not fall within the legal definition of attendant care. We remand for further consideration of the claim for attendant care in light of the views expressed in this opinion. Lopez v. Pennsuco Cement & Aggregates, Inc., 401 So.2d 875 (Fla. 1st DCA 1981).
REVERSED and REMANDED.
WENTWORTH, J., concurs.
NIMMONS, J., concurs specially.

. Refers to the second supplemental record filed with this court May 23, 1985.

. The deputy’s finding that Dr. Penalvar "opined that Mr. Perez did not require attendant care either on a physical or psychological basis, except during a period following the untimely death of the Perez’ only child” is not supported by the record.