CARLOS MÉNDEZ ORELLANA, recurrente, *v.* FONDO DEL SEGURO DEL ESTADO, recurrido.

*Número:* CE-88-453          *Resuelto:* 19 de marzo de 1996

*Efraín Cintrón García*, abogado del recurrente; *José Ramón Jorge Quiñones*, abogado del recurrido.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El Señor Carlos Méndez Orellana trabajaba para la Autoridad de Energía Eléctrica de Puerto Rico en calidad de Encargado de Celadores de Línea. El 3 de octubre de 1970, mientras desempeñaba las funciones habituales de su cargo, el obrero sufrió un accidente al recibir una fuerte descarga eléctrica que le ocasionó serias quemaduras. A consecuencia de ello, le fue amputado el brazo izquierdo por el hombro, la pierna izquierda por el tercio superior y la pierna derecha por el medio del muslo.

El lesionado estuvo hospitalizado desde la fecha del accidente hasta el 27 de abril de 1971, cuando fue dado de alta para continuar tratamiento de rehabilitación como paciente ambulatorio. El 31 de octubre de 1973, conforme a la condición física que presentaba el lesionado, el Administrador del Fondo del Seguro del Estado (en adelante el Fondo) emitió una decisión que decretó su incapacidad total permanente.

En o antes de 1ro de noviembre de 1986, la esposa del obrero fue informada por una empleada del Fondo que éste tenía derecho al beneficio de un ama de llaves por su incapacidad. Fue entonces que, por primera vez, el obrero reclamó al Fondo el nombramiento de un ama de llaves. Así las cosas, el 25 de agosto de 1987, el Administrador del Fondo consideró favorablemente la anterior reclamación e hizo retroactivo el pago del beneficio a 1ro de noviembre de 1986, fecha cuando lo solicitó.

No conforme, el obrero lesionado apeló a la Comisión Industrial por entender que le correspondía el pago retroactivo a la fecha cuando fue dado de alta del hospital. La Comisión Industrial confirmó la decisión del Fondo. Resolvió que, a la luz de la evidencia sometida, no podía concluir que desde 1971 hasta 1986 el obrero hubiera requerido la asistencia continua de otra persona. Fundamentó su decisión en el informe realizado previo al otorgamiento del beneficio de ama de llaves, cuyo propósito era determinar la situación del lesionado. Además, indicó que por razón del largo período de tiempo que esperó el lesionado para hacer dicha reclamación, el Administrador del Fondo se vio privado de efectuar aquella investigación que le permitiera verificar que la condición del lesionado, al momento de ser dado de alta del Hospital Industrial, ameritaba la concesión de la compensación solicitada.

Recurre ante nos el obrero para alegar que la Comisión Industrial erró al no revocar la decisión tomada por el

Fondo, en vista de que ella no está sostenida por la prueba y constituye un abuso de discreción por parte del Fondo.

## I

■ La Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, establece en su sección 3 los derechos de los obreros y empleados que sufren lesiones o enfermedades ocupacionales. 11 L.P.R.A. sec. 3.

■ El subinciso (d) de la referida sección dispone la compensación y los beneficios por incapacidad total permanente. En ella se define, en lo pertinente, esta incapacidad como "la pérdida total y permanente de la visión industrial de ambos ojos, la pérdida de ambos pies por el tobillo o más arriba, la pérdida de ambas manos por la muñeca o más arriba, la pérdida de una mano y un pie, perturbaciones mentales totales que sean incurables, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajo u ocupaciones remunerativas". 11 L.P.R.A. sec. 3.

■ Un empleado que sea declarado total y permanentemente incapacitado, por razón de una lesión u enfermedad ocupacional, tiene derecho a recibir una compensación equivalente a un sesenta y seis y dos tercios (66 2/3) por ciento de su sueldo por la duración de su incapacidad, sujeto a los límites que allí se disponen. Además, tiene derecho a otros beneficios tales como la compensación para un ama de llaves, el suministro de aditamentos especiales y la ayuda económica para la construcción o mejora de su vivienda.

■ Un obrero que por razón de su incapacidad se vea obligado a depender de una silla de ruedas para moverse,

continuará recibiendo los beneficios y la compensación por incapacidad total y permanente, aún cuando logre ser rehabilitado en cualquier otra área de la industria y la Comisión Industrial determine que la incapacidad ha cesado.

■ Según establece el Art. 1 de la Ley Núm. 45, *supra*, 11 L.P.R.A. sec. 1a (Sup. 1995), su propósito principal es proveerle al trabajador lesionado los mejores servicios médicos disponibles de manera que logre regresar a su empleo a la mayor brevedad posible. De esto no ser factible, debido a impedimentos físicos o mentales de carácter permanente, su objetivo se centra en ofrecer programas de rehabilitación, que promuevan el desarrollo del trabajador al máximo de su capacidad, acompañados de beneficios adicionales que suplan la reducción de su capacidad.

■ Aclarado el esquema de beneficios a los que tiene derecho un obrero con incapacidad total y permanente, procedemos a considerar la controversia que es objeto de este pleito, sin perder de vista que las leyes laborales deben interpretarse liberalmente, resolviendo toda duda a favor del obrero para así cumplir con sus propósitos eminentemente sociales y reparadores. *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024 (1994); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993); *Villanueva Pérez v. Comisión Industrial*, 109 D.P.R. 790 (1980); *Alonso García v. Comisión Industrial*, 102 D.P.R. 733 (1972).

II

En esta ocasión tenemos ante nuestra consideración la disposición referente al beneficio de un "ama de llaves", el cual está disponible para aquellos obreros que sufren de incapacidad total y permanente. La disposición legal que prescribe este derecho dispone, en lo pertinente, lo siguiente:

Cuando a juicio del Administrador la condición física o mental del incapacitado requiera la asistencia continua de otra per-

sona, éste podrá autorizar el pago adicional de no más de sesenta (60) dólares mensuales a favor del familiar o de la persona que atienda al incapacitado mientras persista la necesidad.[1]

■ Ésta disposición es reflejo de la tendencia en Estados Unidos hacia la concesión de mayores beneficios para obreros incapacitados por accidentes en el trabajo. En un sinnúmero de jurisdicciones estatales se ha adoptado lo que el profesor Larson cataloga como la "norma moderna", mediante la cual se compensa al cónyuge o familiar por los servicios de cuidado brindados al obrero lesionado, siempre y cuando éstos sean "fuera de lo ordinario". 2 *Larson's Workmen's Compensation Law* Sec. 61.13 (1995). Entre los servicios que se han reconocido como compensables se encuentran bañar, vestir, alimentar, suministrar medicamentos, asistir en las funciones sanitarias o escoltar al lesionado. Véanse: *St. Clair v. County of Grant*, 797 P.2d 993, 1002 (N.M. 1990); *Trejo v. Michigan Sugar Co.*, 350 N.W.2d 314, 316 (1984); *Sealey Mattress Co. v. Gause*, 466 So. 2d 399, 400 (1985); *Dresser Minerals v. Hunt*, 556 S.W.2d 138, 140 (1977).

■ La práctica a nivel estatal también avala el reembolso al ayudante o asistente por los servicios ya brindados al momento de la presentación de la reclamación. No obstante, para que se conceda de forma retroactiva dicho beneficio se requiere haber notificado previamente al patrono o a la autoridad pertinente, según sea el caso, de la necesidad del lesionado de recibir este tipo de servicio y que el patrono o la agencia pertinente no hayan atendido o se hayan negado a atender dicha petición. *Burd v. Industrial Commission*, 566 N.E.2d 35 (1991); *Currier v. Hruska U.S. Meat An. Res. Ctr.*, 421 N.W.2d 25 (1988); *Perez v. Pennsuco*

---

[1] 11 L.P.R.A. sec. 3 (Sup. 1995). Esta sección ha sido enmendada en dos (2) ocasiones para aumentar la cuantía a concederse por dicho beneficio, la cual inicialmente era de treinta dólares ($30): en 1968 se aumentó a cuarenta dólares ($40) y en 1987 a sesenta dólares ($60).

*Cement & Aggregates*, 474 So. 2d 293 (1985); *City of Kos-ciusko v. Graham*, 419 So. 2d 1005 (1982). También se reconoce el pago retroactivo por estos servicios cuando, debido a la naturaleza de la lesión, se le pueda imputar al patrono o a la agencia pertinente el conocimiento sobre la necesidad del lesionado de contar con este tipo de asistencia. *Ogden Allied Services v. Bryant*, 647 So. 2d 195 (1994); *Wee Wisdom Montessori School v. Vickers*, 584 So. 2d 133 (1992); *Standard Fire Insurance Company v. Simon*, 474 S.W.2d 530 (1971).

## III

En el caso de marras el Fondo ordenó un estudio social para determinar si la condición física del obrero ameritaba la asistencia continua de otra persona. A base de este informe, la Comisión Industrial coincidió con el Fondo en que el obrero tenía derecho a recibir el beneficio de un ama de llaves, retroactivo a la fecha de la reclamación. Por otro lado, concluyó que se encontraba impedida de conceder el pago por el beneficio, retroactivo al momento cuando fue dado de alta del hospital, puesto que no le era posible determinar la condición del obrero en esa fecha.

Sin embargo, del propio estudio social realizado por el Fondo surge que, aún cuando le proveyeron unas abrazaderas al señor Méndez y se le brindó el adiestramiento apropiado, éste no pudo hacer uso de éstas "debido a que sus muñones [eran] muy cortos". Informe sobre nombramiento de ama de llaves, pág. 2. Por su parte, la señora Méndez testificó que ella bañaba a su esposo, que le enseñó a comer, a escribir[2] y le dada apoyo emocional. Inclusive, para poder cuidar de él, tuvo que abandonar su empleo.

Dicha evidencia, considerada conjuntamente con la determinación del Fondo al efecto de que el obrero es acree-

---

[2] Cabe señalar que al momento del accidente el obrero utilizaba predominantemente su brazo izquierdo, el cual le fue amputado.

dor a dicho beneficio, cuando han transcurrido quince (15) años desde que fue dado de alta del hospital, nos lleva a preguntar lo siguiente: ¿Cómo se justifica que ahora es acreedor de dicho beneficio y no lo era hace quince (15) años cuando, presuntamente, su condición era más aguda? Cualquier duda en la contestación a dicha interrogante tiene que ser resuelta a favor del obrero lesionado.

## IV

Por otro lado, el lesionado afirma que nunca había sido advertido de su derecho a solicitar el beneficio de ama de llaves, razón por la cual no lo había solicitado desde el momento cuando se hizo acreedor a ese derecho. Ni el Fondo ni la Comisión Industrial le dieron peso alguno a este argumento fundamentándose en el principio de que en nuestro sistema adversativo el derecho es rogado.

Si bien esto es así, no podemos permitir que por ignorancia de los beneficios a que tenía derecho se prive a un individuo de éstos cuando el Fondo nada hizo por informarle de tal derecho y el obrero no contaba con representación de abogado en esa etapa del proceso administrativo.

A estos efectos, resultan ilustrativas las palabras del Primer Distrito del Tribunal de Apelaciones de Florida, en *Walt Disney World Co. v. Harrison*, 443 So. 2d 389, 393–394 (1983), las cuales —conscientes de que en Florida la obligación de proveer este servicio recae sobre el patrono, a diferencia de Puerto Rico donde le compete al Fondo— son sumamente pertinentes a nuestra controversia:

> Ordinarily, a claimant should know whether she needs attendant care, and section 440.13(1) explicitly requires that the employer pay the employee for such services, if actually needed, when requested by the employee. Here, claimant made no such request. *But unless claimant knew that such services would be provided under the act, how could she be expected to make such a request? We have been troubled by this case because the young claimant was apparently not aware of her right to such care*

*until ..., some three weeks after her discharge ... Should claimant's failure to request such care be allowed to excuse the employer from responsibility for such obviously needed benefits ...? We do not believe so.*

*... [A]n employer is under a continuing obligation, once it has knowledge of an employee's injury, to place needed benefits in the hands of the injured worker. [Citas omitidas.] This obligation cannot be met unless the employer informs the injured worker of the benefits to which he or she is entitled.* Section 440.13(1) requires the employer to pay the claimant for attendant care services obtained by her, even though not first requested, if the nature of the injury requires such nursing services and if the employer, having knowledge of the injury, failed to provide such services.

En este caso, la condición del lesionado debía haber servido de señal de alerta para el Fondo. Ésta es la entidad que posee todos los datos y la información sobre el lesionado y es la que le provee los servicios médicos y otros beneficios a éste. Dicha agencia debía estar al tanto del progreso de dicha persona por lo que tenemos que presumir que conocía de la condición del lesionado a los fines de poder determinar si éste podía cuidar de sí mismo al momento de declararle incapacitado. Tales datos tienen que surgir de sus propios expedientes.

No habiendo presentado el Fondo prueba en contrario, tenemos que presumir que la condición del obrero que justificó la concesión del referido beneficio quince (15) años después de haber sido dado de alta del hospital ya existía a tal fecha. Dicha presunción fue corroborada por la prueba directa del obrero. Dando por probada dicha condición, el Fondo tenía el deber de informarle al obrero de su derecho a solicitar el beneficio de un ama de llaves. El tiempo transcurrido no debe ser óbice para concederle éste de forma retroactiva a dicho momento.

Por los motivos consignados anteriormente, *se revocará la decisión emitida por la Comisión Industrial y se ordenará la concesión del beneficio de un ama de llaves al*

*obrero lesionado con carácter retroactivo a la fecha cuando fue dado de alta del Hospital Industrial.*