EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Felipe Rivera Prudencio, et al<br><br>Recurrido<br><br>v.<br><br>Municipio de San Juan, et al<br><br>Peticionario | Certiorari<br><br>2007 TSPR 19<br><br>170 DPR ____ |

Número del Caso: CC-2003-520

Fecha: 2 de febrero de 2007

Tribunal de Apelaciones:

      Región Judicial San Juan, Panel I

Juez Ponente:

      Hon. Roberto González Rivera

Abogado de la Parte Peticionaria:

      Lcdo. Simone Cataldi Malpica

Abogado de la Parte Recurrida:

      Lcda. Lourdes G. Aguirrechu Salom
      Lcdo. Guillermo Ramos Luiña

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Felipe Rivera Prudencio, *et al*

    Recurrido

        v.

Municipio de San Juan, *et al*

    Peticionario

CC-2003-520

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 2 de febrero 2007

La controversia medular que tenemos que atender en el presente caso gira en torno al alcance de la Ley Núm. 115 del 20 de diciembre de 1991, según enmendada, 29 L.P.R.A. secs. 194 *et seq*., comúnmente conocida como "Ley de Represalias". Específicamente, debemos resolver si dicha ley protege a empleados municipales y al testimonio que presten ante un foro administrativo municipal.

**I**

El señor Felipe Rivera Prudencio ("Rivera Prudencio" o el "recurrido") comenzó a trabajar el 18 de enero de 1994 en el Departamento de Vivienda y Desarrollo Comunal del Municipio de San Juan (el

"Municipio"), como funcionario ejecutivo III.[1] Dos años más tarde, se le informó que sería asignado al Programa de Sección 8. Inconforme con dicha determinación, el recurrido presentó una querella ante la Oficina de Igualdad en el Empleo y Relaciones Laborales adscrita a la Comisión para Ventilar Querellas y Asuntos de Personal del Municipio el 25 de junio de 1996, alegando que su reubicación respondía a una acción discriminatoria y caprichosa de la entidad nominadora.

Aproximadamente seis (6) meses mas tarde y pendiente aun la querella instada, el Municipio le informó que sería reubicado en el área de autosuficiencia a partir del 27 de enero de 1997. Al año siguiente, el recurrido fue asignado al área de inspección. Dos años después, se le reubicó en el programa de implantación de ordenanzas. Al cabo de tres meses de estar allí el recurrido recibió una carta en la que le notificaban que a partir del 12 de mayo de 1999, sería trasladado al área de inspección por necesidades del servicio.

El 17 de mayo de 1999 se le reubicó en el programa de rehabilitación de vivienda. Sin embargo, una semana después, el señor Rivera Prudencio fue reasignado nuevamente en esta ocasión al programa de adquisición y realojo.

El 30 de junio de 1999, se le informó que conforme el Plan de Clasificación y Retribución del Municipio, su puesto estaba catalogado como oficial administrativo I y dicha

---

[1] Debido a la etapa procesal que el caso nos llega, la relación de hechos se basa en las alegaciones contenidas en la demanda instada en este caso.

designación era retroactiva al 1ero de marzo de 1999. El recurrido impugnó la clasificación de su puesto señalando que la misma obedecía a las funciones que desempeñaba en ese momento y no al puesto que en efecto ostentaba bajo el anterior plan de clasificación de funcionario ejecutivo III. Señaló que el nuevo plan le ubicó en un puesto de inferior jerarquía que el que le correspondía; lo que a su vez conllevaba una reducción de su salario.

En vista de todo lo anterior, el señor Rivera Prudencio junto a su esposa, la señora Norma Santiago Colón, y en representación de la sociedad de gananciales compuesta por ambos, presentaron una demanda contra el Municipio por represalia al amparo de la Ley Núm. 115 del 20 de diciembre de 1991, 29 L.P.R.A. sec. 194 *et seq.,* ("Ley Núm. 115" o "Ley de Represalias"). En la misma, el recurrido alegó que fue trasladado a diferentes posiciones en represalia por haber instado una querella contra el Municipio ante la Comisión para Ventilar Querellas y Asunto de Personal, Oficina de Igualdad en el Empleo y Relaciones Laborales (la "Comisión") del Municipio. Solicitó ser ubicado en un puesto con funciones compatibles con su clasificación como funcionario ejecutivo III, así como la correspondiente compensación en daños y perjuicios. A su vez, su esposa reclamó bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por los daños y perjuicios que alegadamente sufrió debido a los distintos traslados de su esposo.

Como parte del trámite procesal ante el foro de instancia, el recurrido cursó un interrogatorio y un requerimiento de admisiones al Municipio. Pasado varios meses sin que el Municipio contestara los mismos el tribunal los dio por admitidos. Luego de solicitar reconsideración y de un largo trámite judicial, el 22 de marzo de 2002, el Municipio finalmente contestó el requerimiento de admisión, pero sin juramentar el mismo. En vista de lo anterior, la parte recurrida solicitó que no se aceptara la respuesta del Municipio y se diera por admitido el requerimiento de admisiones.

El Municipio presentó sendas mociones solicitando la desestimación de la demanda instada. En la primera, alegó falta de jurisdicción sobre la materia por entender que la Comisión para Ventilar Querellas y Asuntos de Personal del Municipio no era un "foro administrativo" para efectos de la Ley de Represalias. Ello, en virtud que la Comisión no era un ente administrativo bajo la Ley de Procedimientos Administrativos Uniforme (la "LPAU"), 3 L.P.R.A. secs. 2101 *et seq*. Adujo además que la Ley Núm. 115 no aplicaba a los empleados públicos que ostenten nombramiento de carrera, conforme lo establece la definición de empleado que provee la propia ley.

En la segunda moción de desestimación, el Municipio planteó que los daños reclamados por el señor Rivera Prudencio antes del 14 de julio de 1997 estaban prescritos, como también los daños reclamados por la señora Santiago

Colón.  En esta moción el Municipio solicitó también que no se diera por admitido el requerimiento de admisiones que le cursó la parte demandante.

La parte recurrida se opuso a ambas mociones alegando, entre otras cosas, que el foro de instancia tenía jurisdicción para atender la reclamación instada al amparo de la Ley Núm. 115.  Además, adujo que los daños que se reclamaban en la demanda no estaban prescritos toda vez que el término prescriptivo para una reclamación bajo la Ley Núm. 115 era de tres (3) años computados desde la fecha en que ocurrió la violación.  Se adujo que el término comenzó a computarse a partir del 24 de enero de 1997, fecha en que comenzó la cadena de traslados y movimientos de personal. Habiéndose presentado la demanda el 14 de julio de 1999, la misma no estaba prescrita.

Sobre los daños reclamados por la señora Santiago Colón, la parte recurrida alegó que éstos eran de carácter continuado por lo que su causa de acción se presentó oportunamente.  Asimismo, la parte recurrida reiteró su solicitud de que no se aceptara la contestación tardía del Municipio a los requerimientos de admisiones.

Trabada así la controversia, el foro de instancia mediante sendas resoluciones, proveyó no ha lugar a las solicitudes de desestimación presentadas por el Municipio.[2]

_____

[2] Anteriormente, el Municipio había renunciado a su planteamiento de prescripción en cuanto a la reclamación del señor Rivera Prudencio por entender que había cometido un error al efectuar el cómputo de la prescripción.  Pero,

El tribunal resolvió que la reclamación bajo la Ley Núm. 115 no estaba prescrita y además, que los daños reclamados por la señora Santiago eran de carácter continuo por lo que tampoco estaban prescritos. En cuanto al requerimiento de admisiones, el foro de instancia, luego de resaltar el trámite accidentado de la solicitud de requerimiento de admisiones, concluyó que el Municipio había sido displicente y no había contestado el mismo a tiempo por lo que lo dio por admitido.[3]

Luego de notificada ambas resoluciones, el Municipio solicitó oportunamente reconsideración al foro de instancia de su decisión de dar por admitido el requerimiento de admisiones. El 18 de diciembre de 2002, el tribunal acogió la moción de reconsideración. Sin embargo, dos días antes —el 16 de diciembre de 2002— el Municipio ya había presentado su recurso de *certiorari* ante el Tribunal de Apelaciones.[4] En su recurso ante el foro apelativo, el Municipio cuestionó

_____

respecto a la reclamación de la señora Santiago Colón reiteró su alegación de que estaba prescrita.

[3] Respecto a la moción de desestimación por falta de jurisdicción sobre la materia, el Tribunal de Primera Instancia la declaró no ha lugar sin más.

[4] Hemos establecido que el Tribunal de Primera Instancia puede considerar una oportuna moción de reconsideración luego de transcurrido el término que provee la regla para atenderla, **siempre que dicho foro no haya sido privado de jurisdicción por razón de haberse interpuesto contra la sentencia un recurso de apelación o de certiorari** o no haya expirado el término para interponer dichos recursos. *El Mundo v. Tribunal Superior*, 92 D.P.R. 791, 801 (1965), reafirmado en *Caro Ortiz v. Cardona Rivera*, res. 11 de febrero de 2003, 158 D.P.R. ___ (2003), 2003 T.S.P.R. 11, 2003 J.T.S. 13. De ahí que, en el presente caso el foro de instancia carecía de jurisdicción cuando acogió la moción de reconsideración, por haberse interpuesto previamente un recurso de *certiorari* ante el Tribunal de Apelaciones.

la determinación del tribunal de instancia denegando las solicitudes de desestimación y al haber ordenado que se diera por admitido el requerimiento de admisiones.

El Tribunal de Apelaciones denegó la expedición del auto presentado por entender que no se cometieron los errores señalados. Según el foro apelativo los términos de la Ley Núm. 115 eran claros. La intención del legislador fue proteger a todo empleado por expresiones vertidas en cualquier foro administrativo sin excepción de persona y sin exceptuar aquellos foros administrativos creados mediante ordenanza municipal que no estuviesen cubiertos por la LPAU. Asimismo, el foro apelativo subrayó que los daños reclamados por la señora Santiago Colón eran de naturaleza continua, por lo que éstos no habían prescrito al momento de presentarse la demanda. Finalmente, dicho foro concluyó que procedía que se diera por admitido el requerimiento cursado, en vista del reiterado incumplimiento del Municipio en contestar el mismo para ello y a pesar de los múltiples apercibimientos del Tribunal sobre las consecuencias de no contestarlo oportunamente.

Insatisfecho, el Municipio de San Juan acudió ante nosotros.[5] El 5 de septiembre de 2003 expedimos el auto

_____

[5] En el escrito presentado se señalaron los siguientes errores:

> Erró el Tribunal de Circuito de Apelaciones al concluir que la Comisión para Ventilar Querellas y Asuntos de Personal del Municipio de San Juan es un foro administrativo.

presentado. Las partes han comparecido por lo que estamos en posición de resolver y pasamos a así hacerlo.

## II

Los primeros tres errores señalados por el Municipio de San Juan en su recurso se refieren al alcance de la Ley Núm. 115. El Municipio sostiene que la Ley Núm. 115 no aplica a los municipios por éstos no haber sido incluidos en la definición de "patrono" que dispone la ley. Además, planteó que la Comisión no era una agencia administrativa conforme las disposiciones de la LPAU, por lo que el testimonio que el señor Rivera Prudencio ofreció ante dicho organismo no era una actividad comprendida dentro del ámbito de protección de la Ley Núm. 115. Pasemos entonces a discutir este asunto.

## A

La Ley Núm. 115 es un estatuto de carácter reparador que prohíbe el discrimen contra un empleado por ofrecer o

---

Erró el Tribunal de Circuito de Apelaciones al concluir que un testimonio ofrecido ante la Comisión para Ventilar Querellas y Asuntos de Personal del Municipio – es una actividad comprendida en el ámbito de protección de la Ley 115 de 20 de diciembre de de 1991.

Erró el Tribunal de Circuito de Apelaciones al concluir que el Tribunal de Primera Instancia tiene jurisdicción para entender sobre la reclamación de los recurridos bajo la Ley 115, *supra*.

Erró el Tribunal de Circuito de Apelaciones al concluir que la reclamación de la Sra. Santiago Colón no está parcialmente prescrita.

Erró el Tribunal de Circuito de Apelaciones al concluir que el Tribunal de Primera Instancia no incurrió en error al dar por admitidos el requerimiento de admisiones.

intentar ofrecer información o testimonio ante un foro legislativo, administrativo o judicial en Puerto Rico. La ley provee para que todo empleado que fuere despedido, amenazado o que fuere objeto de discrimen en el empleo por motivo de represalia, pueda instar una acción civil en contra del patrono dentro de los 3 años próximos a la fecha en que ocurrió dicha violación. 29 L.P.R.A. 194a. Véase sobre el particular, *Cintrón Díaz v. Ritz Carlton*, res. 26 de mayo de 2004, 161 D.P.R.___, 2004 T.S.P.R. 82; *Marín Kuilan v. Díaz Fastening System*, 142 D.P.R. 499 (1997). Véase también, A. Acevedo Colom, *Legislación Protectora del Trabajo Comentada*, Ramallo Print. Bros., San Juan, 1999, 6ta Ed., pág. 250.

La Exposición de Motivos de la Ley Núm. 115 indica claramente que con esta ley se procura ratificar "la protección de los empleos de los trabajadores, **tanto de las instrumentalidades del Estado Libre Asociado como del sector privado**, cuando comparecen ante la Legislatura o alguna de sus comisiones, y ante foros administrativos o judiciales para colaborar con dichos foros." (Énfasis suplido.) Este texto es claro y no admite confusión y apunta a que el legislador tenía la intención de hacer extensiva la protección conferida por la Ley Núm. 115 al sector gubernamental. Como sabemos, de ordinario, la exposición de motivos de un estatuto recoge el propósito del mismo. No obstante, del texto de la ley no surge expresamente o con total claridad lo que se declara en la exposición de motivos. Nos explicamos.

La ley define **patrono** como: "cualquier persona que tenga uno o más empleados." Art. 1, Ley Núm. 115, 29 L.P.R.A. 194. **Persona**, por su parte, se define como: "individuo, sociedad, corporación, asociación, así como cualquier entidad jurídica."[6]   *Íbid*.   **Empleado**, aparece definido de la siguiente manera: "cualquier persona que preste servicios a cambio de salarios, o cualquier tipo de remuneración, mediante un contrato oral, escrito, explícito o implícito." Como puede observarse, aunque la exposición de motivos hace alusión al sector gubernamental, la falta de precisión en las definiciones contenidas en la ley dejan margen para una interpretación en contrario.

El historial legislativo pone de manifiesto esta falta de claridad sobre la aplicabilidad de la ley al sector gubernamental.   A esos efectos, en la ponencia del Departamento del Trabajo y Recursos Humanos sobre el P del S. 987, —que luego se convertiría en la Ley Núm. 115— se indicó lo siguiente: "debido a que de las definiciones de empleado y patrono no se hace exclusión alguna[,] [e]tendemos (sic) que la ley especial resultante será de aplicación **a todo tipo de empleado de la empresa privada y de**

---

[6] No estimamos que la expresión "entidad jurídica" comprenda al sector gubernamental lo que incluye claro está al municipio pues como se sabe, cuando las palabras generales siguen a las palabras específicas en un enumeración descriptiva, las palabras generales se interpretan para que incluyan solamente asuntos similares en su naturaleza a los enumerados en forma específica. *Autoridad sobre Hogares v. Tribunal Superior*, 82 D.P.R. 344, 358-359 (1961); *Puerto Rico Ilustrado v. Buscaglia*, 64 D.P.R. 914, 921-923 (1945).   L. Elfren Bernier, *Aprobación e interpretación de las Leyes en Puerto Rico*, pág. 341.

**gobierno**, sin importar el nivel de gobierno (central o municipal) ni el tipo de agencia (tradicional o corporación pública semejante a negocio o empresa privada). Nótese la expresión que en ese sentido se hace en el segundo párrafo de la Exposición de Motivos. **Si la intención de la medida no fuere como hemos dejado expuesto, corresponde hacer las aclaraciones de rigor."** (Énfasis nuestro.)

La Junta de Relaciones del Trabajo de Puerto Rico expresó igual preocupación ante la Comisión de lo Jurídico del Senado. En su ponencia expresó: "dado que la Exposición de Motivos indica el deseo de proteger a los trabajadores, tanto de las instrumentalidades del Estado Libre Asociado (ELA) como del sector privado, **entiendo que la definición de "Patrono" (Artículo 1(b) de la proyectada ley) debe incluir, específicamente, a las instrumentalidades del E.L.A."** (Énfasis nuestro.) El texto del proyecto de ley no se modificó conforme habían sugerido tanto el Secretario del Trabajo como la Junta Nacional de Relaciones del Trabajo.

El Secretario de Justicia sin embargo, da por sentado que la misma aplica tanto al sector público como al privado, al indicar en su ponencia expresamente: "[e]l P. del S. 987 propone ratificar y confirmar la política pública que ofrece protección a los empleados de los trabajadores, **tanto de las agencias e instrumentalidades públicas como del sector privado. . . ."** (Énfasis nuestro.)

Esta ambivalencia se ha reflejado en leyes posteriores. Por ejemplo, la exposición de motivos de Ley Núm. 426 de 7 de

noviembre de 2000, conocida como la "Ley para la protección de los derechos de empleados y funcionarios públicos denunciantes, querellantes o testigos de alegados actos constitutivos de corrupción", expresa lo siguiente: "en lo que respecta a **los empleados del sector privado, la Ley Núm. 115 de 20 de diciembre de 1991 establece una protección adicional cuando un empleado ofrezca o intente ofrecer información sobre el mal manejo de una empresa.** La misma establece las prohibiciones, así como las violaciones y la responsabilidad civil y criminal contra cualquier patrono que exhiba esa conducta. **Es imperativo que al sector público se le extienda una protección similar.**" La Ley Núm. 426 se aprobó para ofrecer protección a empleados y funcionarios públicos que denuncien o sean testigos de actos constitutivos de corrupción en el gobierno. Evidentemente, el legislador al aprobar la Ley Núm. 426 partió de la premisa que la Ley de Represalias sólo era de aplicación al sector privado.

Por el contrario, la exposición de motivos de la Ley Núm. 14 de 11 de abril de 2001, conocida como la "Ley de protección y compensación a personas denunciantes actos de corrupción contra fondos y propiedad pública", señala que en Puerto Rico se ha aprobado legislación para proteger a los empleados públicos que divulguen información dirigida a combatir los actos ilegales de los funcionarios gubernamentales **y para sostener esta proposición se cita expresamente, la Ley Núm. 115** y la Ley Núm. 426. La Asamblea Legislativa por lo tanto, no ha hablado con una voz uniforme

respecto la aplicabilidad de la Ley Núm. 115 al sector gubernamental.

Existe un evidente desfase entre lo que aparenta ser la intención legislativa según consta en la exposición de motivos de la Ley Núm. 115 y el contenido mismo de la ley, según ejemplificado por la interpretación hecha por la Asamblea Legislativa sobre el alcance de dicha ley. Al dilucidar estas incongruencias lo hacemos tomando en cuenta que, por ser la Ley Núm. 115 un estatuto de carácter laboral, toda duda en cuanto a su interpretación y alcance debe resolverse a favor del obrero o empleado, para de esta forma adelantar los principios reparadores y sociales que animan nuestra legislación laboral. Así se logra garantizar la mayor protección de los derechos a nuestras trabajadoras y trabajadores. *E.g.*, *Rosario Toledo v. Distribudora Kikuet*, 151 D.P.R. 634 (2000); *Irizarry v. Johnson & Johnson Consumer Products Co.*, 150 D.P.R. 155, 164 (2000); *Méndez v. Fondo del Seguro del Estado*, 140 D.P.R. 375 (1996).

El antecedente de la Ley Núm. 115 lo encontramos en la Ley Núm. 65 de 3 de julio de 1986. *Irizarry v. Johnson & Johnson, supra,* pág. 166. Esta última enmendó el Art. 2 Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185b, para disponer que no sería justa causa para el despido de un empleado sus "expresiones relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico. . . ."

29 L.P.R.A. sec. 185b.[7] Del texto de la Ley Núm. 65 y su propia exposición de motivos surgía que el alcance de la enmienda era limitar la protección ofrecida a expresiones hechas por el empleado en el curso de una investigación del negocio del patrono.

En *Irizarry*, al enfrentamos a un cuestionamiento sobre el alcance de la Ley Núm. 115 concluimos, luego de analizar detalladamente el historial legislativo así como los antecedentes de la ley, que el propósito del legislador al aprobar la Ley Núm. 115 fue crear una ley general de represalias y ampliar la protección que ofrecía el Art. 2 de la Ley Núm. 80, según enmendada por la Ley Núm. 65. Ello así, al eliminar el requisito de que el testimonio protegido fuera, exclusivamente, aquél ofrecido durante el curso de una investigación al patrono.[8] El historial legislativo sí es claro al expresar que la Ley Núm. 115 pretende conferirle la mayor protección posible a los trabajadores.

Al establecer un amplio entramado de protección a los trabajadores, es razonable concluir que se pretendió, tal y como se explica en la exposición de motivos de la ley, hacer extensiva la protección que ofrece la ley al sector gubernamental. La falta de especificidad en los artículos de

---

[7] Como sabemos, la Ley Núm. 80 aplica con carácter de exclusividad a la empresa privada y a los entes gubernamentales que operan como corporaciones públicas. Guía Revisada, para la interpretación y aplicación de la Ley Núm. 80, 30 de mayo de 1976, Departamento del Trabajo y Recursos Humanos, pág. 24.

[8] Véase, Memorando de la Junta de Relaciones del Trabajo de Puerto Rico sobre el P. del S. 987.

la ley no detracta de lo que pretendió hacer el legislador al aprobar esta ley y de cuál fue su verdadero alcance. Una interpretación como la propuesta por el Municipio dejaría fuera del ámbito de protección a un sector importante de la clase trabajadora puertorriqueña, lo que sería contrario a la intención legislativa. No podemos avalar por lo tanto la interpretación propuesta por el Municipio de San Juan.

Concluimos por lo tanto, que a la luz del historial legislativo, las normas de hermenéuticas aplicables y la mas reciente expresión legislativa respecto el alcance de la Ley Núm. 115, ésta ofrece protección a los empleados municipales.

**B**

El Municipio de San Juan también arguyó que en vista que la LPAU no le aplica a un municipio y, toda vez que en *Irizarry v. Johnson & Johnson* concluimos que expresiones ante el Fondo del Seguro del Estado estaban protegidas por la Ley Núm. 115 al aplicarle al Fondo la definición de foro administrativo de la LPAU, expresiones hechas ante los foros municipales no están cobijadas por la protección que ofrece la Ley Núm. 115. No tiene razón el Municipio.

La Comisión para Ventilar Querellas y Asuntos de Personal, adscrita a la Oficina de Igualdad de Oportunidades en el Servicio del Municipio de San Juan, fue creada mediante la Ordenanza Municipal Núm. 32, serie 1985-86, de 13 de noviembre de 1985. La ordenanza dispone que dicha Comisión será "el foro administrativo adecuado ante el cual puede recurrir todo empleado municipal para ejercer su derecho a

solicitar una vista administrativa para dilucidar la controversia y controvertir los cargos formulados en su contra, en aquellos casos en los que se ha generado contra éste una acción disciplinaria que puede resultar en una suspensión de empleo y sueldo por un término no mayor de 30 días o en una destitución". Además, dispone que la Comisión es "el foro administrativo adecuado que le garantiza a todo empleado municipal el derecho a ventilar sus querellas por alegado discrimen . . . en relación con la obtención o tenencia de un empleo en el Municipio de San Juan."

Aunque la Ley Núm. 115 no define el concepto de "foros administrativos", lo cierto es que conforme señalamos anteriormente, con ésta el legislador pretendió conferirle a los obreros o empleados la protección más amplia en contra de las represalias que pudiera tomar su patrono ante las expresiones vertidas por sus empleados en distintos foros incluyendo los foros administrativos. Sería un contrasentido, dejar fuera del ámbito de protección la entidad administrativa creada por el Municipio precisamente para escuchar y atender las quejas del empleado municipal en contra del propio Municipio. Siendo la Comisión, por sus propios términos, un foro administrativo, no debemos excluirla de la Ley Núm. 115 y ponerle trabas a esta ley que no fueron concebidas por el legislador. Por lo tanto, no erró el foro apelativo intermedio al disponer que en efecto la presentación de una querella por parte de un empleado ante la Comisión para Ventilar Querellas y Asuntos de Personal del

Municipio de San Juan era una de las "actividades protegidas" por la Ley Núm. 115.

III

El próximo señalamiento de error del Municipio se refiere a que erró el tribunal *a quo* al concluir que la reclamación extracontractual de la señora Santiago Colón, no estaba prescrita toda vez que los daños por los que se reclamaba eran de carácter continuo. El Municipio alegó por el contrario, que los mismos eran daños sucesivos y como tal, aquéllos que, alegadamente, la señora Santiago sufrió antes del año en que se presentó la demanda estaban prescritos.

A

Las acciones para exigir el resarcimiento del daño sufrido como consecuencia de la culpa o negligencia de un tercero posee una vida limitada y se extingue una vez transcurrido el plazo estatuido sin que se interrumpa eficazmente. Art. 1873 del Código Civil, 31 L.P.R.A. 5303. El propósito de la prescripción es fomentar el pronto reclamo de los derechos a la vez que se protege al obligado de la eterna pendencia de un reclamo en su contra. Como en tantas ocasiones hemos dicho, en Puerto Rico la prescripción constituye un derecho sustantivo y acarrea la desestimación de cualquier demanda presentada fuera del término previsto para ello. *Maldonado v. Russe*, 153 D.P.R. 342, 347 (2001).

De ordinario, el término prescriptivo comienza a transcurrir desde que el agraviado tuvo conocimiento del daño y pudo ejercer su causa de acción, lo que no necesariamente

coincide con el momento en que se sufre el daño resarcible. *Santiago v. Ríos Alonso*, 156 D.P.R. 181, 189 (2000).  Por ello, es menester identificar el tipo de daño que se trate para poder establecer el punto de partida o momento inicial del cómputo y de esta forma conocer con certeza cual será su momento final.  J. Puig Brutau, *Caducidad y Prescripción Extintiva*, Barcelona, Ed. Bosch, 1986, pág. 7. *Cintrón v. ELA*, 127 D.P.R. 582, 593 (1990).

Entre las diversas categorías de daños, hemos identificado los llamados daños continuados y los daños sucesivos.[9] *Rivera Encarnación v. E.L.A.,* 113 D.P.R. 383, 386 (1982).  Hemos señalado que los daños continuados son "aquellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca --por ser previsible-- el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de un daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto." *Galib Frangie v El Vocero*, 138 D.P.R. 560, 575 (1995); *Santiago v. Ríos Alonso, ante.*

---

[9] Véase sobre el particular, Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, pág. 881; A. Borrell Macia, *Responsabilidad derivada de culpa extracontractual civil*, 2da ed., Barcelona, Ed. Bosch, 1958, pág. 344 *et seq*; J. Castán Tabeñas, *Derecho Civil Español, Común y Foral*, 12ma ed., Madrid, Ed. Reus, 1978, T. I, Vol. 2, pág. 963.

Los daños continuados se distinguen por ser daños derivados de acto ilícito como unidad y no como una pluralidad de daños particulares. Por su naturaleza, el plazo prescriptivo para reclamar por daños de naturaleza continua comienza a transcurrir cuando se verifique el último de los actos o se produzca el resultado definitivo. Véase además, *Santiago v. Ríos Alonso*, 156 D.P.R. 181, 192 (2002).

Por otro lado, los daños sucesivos se definen como aquella "secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, o aún continuamente, pero que se van conociendo en momentos distintos entre los que medió un lapso de tiempo finito, sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable." H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. X, pág. 643.

De lo anterior se desprende que los daños sucesivos constituye una cadena de daños unitarios, individuales y concretos que se producen en intervalos finitos de tiempo y producen efectos jurídicos distintos. Lo que distingue a los llamados daños sucesivos de los daños continuados es que los sucesivos son daños ciertos que se van repitiendo, sin que necesariamente sean idénticos, de forma tal que no son previsibles o susceptibles de ser descubiertos empleando diligencia razonable. Brau del Toro, *op. cit.*, 643. Es

decir, el rasgo determinante de esta categoría es que la repetición del daño no es previsible. No puede considerarse que la secuencia de los daños ciertos son previsible cuando la repetición de los episodios lesivos es meramente especulativa. *Id.*, pág. 644.

Nos explica el profesor Brau del Toro que la causa que propicia los daños sucesivos puede ser "una secuencia de actos culposos o negligentes del actor," o por el contrario, puede tratarse de "un acto único o varios coetáneos que no se repiten pero pueden seguir ejerciendo su efecto lesivo en forma sostenida y duradera, cuyos actos no son previsibles en supuesto alguno." Brau del Toro, *op. cit.*, pág. 643. En ambos casos los actos u omisiones negligentes por parte del autor, que se repiten periódicamente, o el acto generador de las correspondientes consecuencias lesivas, hacen que cada daño se manifieste y sea reconocido cada vez que ocurre.

Por consiguiente, en los "daños sucesivos", cada reconocimiento de una lesión a causa de un acto culposo o negligente produce un daño distinto, generando así cada acto una causa de acción independiente. De allí que el término prescriptivo para el ejercicio de cada una de ellas comienza a contar en el momento en que el daño se manifiesta y el perjudicado tiene conocimiento del mismo. Brau del Toro, *op cit.*, pág. 644. De esta forma, si el perjudicado interpone una "acción resarcitoria transcurrido más de un año del acto dañoso original, su acción estará limitada a los daños

ocurridos durante el último año únicamente, ya que las ocurridas con anterioridad están prescritas." *Id*, pág. 645.

Lo anterior es cónsono con la teoría general de daños que dispone que el periodo prescriptivo de un año para acciones de responsabilidad civil extracontractual comienza a transcurrir en la fecha en que el perjudicado conoce del daño y quién fue su autor, y además conoce los elementos necesarios para ejercer efectivamente su causa de acción. *Santiago Rivera v. Ríos Alonso, supra,* pág. 189. En ese sentido, hemos establecido que **el término prescriptivo de la acción para exigir de la autoridad nominadora la responsabilidad civil extracontractual que pueda surgir por un traslado ilegal y discriminatorio de un empleado público comenzará a transcurrir a partir del momento en que el empleado es notificado de la decisión decretando finalmente el traslado**. Véase, *Cintrón v. ELA*, 127 D.P.R. 582, 594 (1990); *Delgado Rodríguez v. Nazario Ferrer,* 121 D.P.R. 347 (1988. Ello es así, debido a que es a partir de este momento que el agraviado adviene en conocimiento de los daños que le ocasionó la actuación arbitraria. *Ríos v. Administración de Servicios Agrícolas*, 140 D.P.R. 868, 872, (1996).

**B**

En el presente caso la parte recurrida argumentó que los distintos traslados constituyeron un "daño continuo e ininterrumpido" y por lo tanto, el plazo prescriptivo de su causa de acción comenzó a transcurrir el día de la producción del resultado dañoso definitivo. Alegó que todos los

traslados fueron producto de una acción en represalia de la autoridad nominadora, por su esposo haber presentado una querella ante un foro administrativo alegando que fue objeto de un traslado discriminatorio y caprichoso. Ello produjo que se suscitaran los posteriores traslados. No tiene razón.

Somos del criterio que los posibles daños resultantes de la secuencia de traslados que se suscitaron en el presente caso por alegada represalia son de carácter sucesivo.[10] Estamos ante una serie de daños ciertos, individuales y concretos, los cuales no hubiesen podidos ser previstos por el más diligente de la persona prudente y razonable. Es decir, los traslados que se repitieron periódicamente y sus posibles consecuencias lesivas se manifestaron y fueron reconocidos cada vez que ocurrieron. No eran jurídicamente previsibles, sino que por el contrario, la creencia de que ocurrirían subsiguientes traslados era meramente especulativa.

En el presente caso, contrario a lo que decidieron los foros inferiores, los daños alegados en la demanda son producto de una secuencia de actos independientes que conformaron los llamados daños sucesivos. De modo que, cada traslado produjo un daño distinto que generó una causa de acción independiente desde que la autoridad nominadora notificó los mismos. Resolvemos, por lo tanto, que los daños reclamados por la señora Santiago Colón que fueron producto

---

[10] Las expresiones que hacemos hoy no deben entenderse como una adjudicación en los méritos de la causa de acción por la que se reclama en el presente caso. Ello le competerá al Tribunal de Primera Instancia dirimir en su día.

de actuaciones realizadas anterior al año en que se presentó la demanda de epígrafe están prescritos.

**IV**

Finalmente, nos resta determinar si de acuerdo a los hechos del presente caso procedía dar por admitido el requerimiento de admisiones que le fue cursado al Municipio de San Juan. Los requerimientos de admisiones cumplen una función importante en nuestro sistema adversativo pues sirven como un instrumento sencillo y económico para delimitar las controversias del caso. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo I, Publicaciones JTS, San Juan, 2000, pág. 565. Así lo reconocimos en *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 D.P.R. 562 (1997), donde expresamos que la Regla 33 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que regula lo relativo al requerimiento de admisiones, persigue "aligerar los procedimientos, definiendo y limitando las controversias del caso, proporcionando así un cuadro más claro sobre las mismas." *Audiovisual Lang., ante,* pág. 571.

A través de un requerimiento de admisiones una parte puede requerir a la otra que admita la veracidad de cualquier materia que esté dentro del alcance de la Regla 23-1 de Procedimiento Civil, respecto a cuestiones u opiniones de hechos o con la aplicación de la ley a los hechos, o que admita la autenticidad de cualquier documento que se acompañe con el requerimiento. *Audiovisual Lang. v. Sist. Est. Natal Hnos., supra,* pág. 572. Cuevas Segarra, *op. cit.*, pág. 565.

El efecto de dicha admisión es que releva a la parte adversa de tener que presentar en el juicio prueba del hecho admitido y de esta forma propicia que se acorte la audiencia y no se incurran en gastos innecesarios. Cuevas Segarra, *op. cit.*, pág. 566. Por lo tanto, la admisión de un requerimiento se considerará definitiva, salvo que el tribunal permita su retiro o una enmienda a ésta.

La parte interpelada tiene que admitir o negar lo requerido bajo juramento o presentar una objeción escrita sobre la materia en cuestión dentro del término de 20 días. Si ésta no cumple con este término, "las cuestiones sobre las cuales se solicitó la admisión, automáticamente se tendrán por admitidas." *Audiovisual Lang. v. Sist. Est. Natal Hnos., ante,* pág. 573. El requerido tiene un deber afirmativo de responder y de efectuar las gestiones necesarias para obtener la información para admitir o negar.

En el presente caso, en apretada síntesis y según el tracto fáctico recogido en la resolución del Tribunal de Primera Instancia, el 13 de octubre de 2000 la parte recurrida le envió por correo ordinario al Municipio de San Juan el primer pliego de interrogatorios, producción de documentos y requerimiento de admisiones.[11] El 1 de

---

[11] El requerimiento de admisiones enviado al Municipio contenía lo siguiente:

    1) Admita que el demandante Felipe Rivera comenzó a trabajar el 18 de enero de 1994 en el Departamento de Vivienda y Desarrollo Comunal del Municipio de San Juan.

    2) Admita que para el 18 de enero de 1994, el demandante Felipe Rivera se desempeñaba como

diciembre de 2000 el Municipio presentó una moción de

prórroga de 45 días para contestar los requerimientos de

admisiones.   Inmediatamente, el recurrido se opuso a la

_____

          Funcionario Ejecutivo III en el Programa de Rehabilitación de Vivienda encargado del almacén y devengando un salario de [sic] mensual de $905.00 [sic]

3) Admita que efectivo el 20 de junio de 1996 el demandante Felipe Rivera fue reubicado en el Programa de Sección 8.

4) Admita que el demandante Felipe Rivera presentó la Querella número 1712-096-083 ante la Oficina de Igualdad en el Empleo y Relaciones Laborales.

5) Admita que efectivo el 27 de enero de 1997, el demandante Felipe Rivera ocupó el puesto de Técnico del Área de Autosuficiencia o "Self Sufficiency".

6) Admita que efectivo el 1ro. De febrero de 1998 el demandante Felipe Rivera trabajó en el área de Inspección.

7) Admita que efectivo el 12 de enero de 1999, el demandante Felipe Rivera estuvo asignado al Programa de Ordenanzas.

8) Admita que efectivo el 12 de mayo de 1999 el demandante Felipe Rivera estuvo asignado al Área de Inspección.

9) Admita que efectivo el 18 de mayo de 1999 el demandante Felipe Rivera trabajó en el Programa de Rehabilitación de Vivienda.

10) Admita que efectivo el 27 de mayo de 1999 el demandante Felipe Rivera estuvo asignado al Programa de Adquisición y Realojo.

11) Admita que retroactivo al 1ro. de marzo de 1999 al demandante Felipe Rivera se le asignó el puesto de Oficial Administrativo I con escala de 5 devengando un sueldo de $1,225.00.

12) Admita que bajo el actual Plan de Reclasificación el sueldo del Funcionario Ejecutivo III es mayor que el de Oficial Administrativo 1.

prórroga solicitada alegando que la misma se había solicitado fuera del término y en su lugar solicitó que se dieran por admitidos los requerimientos. El tribunal, aunque reconoció que el Municipio no presentó oportunamente su moción de prórroga, le concedió hasta el 22 de febrero de 2001 para contestar los mismos, apercibiéndole que de no contestar o solicitar prórroga dentro del término se darían por admitidos.

Según el expediente de autos, la abogada del Municipio solicitó al tribunal de instancia el 23 de febrero de 2001 autorización para renunciar a la representación legal. Varios días después y ante el incumplimiento del Municipio con la orden del tribunal, la parte recurrida nuevamente solicitó que se dieran por admitidos los requerimientos. El Municipio no presentó oposición. Finalmente, el 4 de mayo de 2001 el foro de instancia dictó la orden según lo intimado por la parte recurrida.

El 17 de mayo de 2001, el Municipio presentó una moción en cumplimiento de orden y otros extremos, la cual se acogió como una solicitud de reconsideración. En dicha moción se solicitó que se dejara sin efecto la referida orden del 4 de mayo de 2001. La parte recurrida se opuso y alegó que el Municipio estaba impedido por sus propios actos de solicitar que se dejara sin efecto dicha orden cuando aún no había contestado los requerimientos.

El 13 de diciembre de 2001, sin haberse tomado acción alguna sobre el asunto de los requerimientos, la nueva

representación legal del Municipio renunció a la misma. Así las cosas, no es hasta el 22 de febrero de 2002 que el Municipio finalmente notificó la contestación a los requerimientos, pero, sin juramentar. En atención a ello, la parte recurrida presentó la correspondiente oposición solicitando que no se aceptara dicha contestación por ser tardía.

Una lectura del anterior tracto procesal pone de manifiesto la falta de diligencia de la representación legal del Municipio en cumplir con las órdenes del tribunal y con las Reglas de Procedimiento Civil que establecen un término mandatario de 20 días para admitir o negar un requerimiento de admisiones. No podemos refrendar la dejadez y desidia de una parte que con sus actuaciones promueve la dilación de los procedimientos judiciales. Ante el incumplimiento del Municipio en realizar actos afirmativos para responder el requerimiento cursado, a pesar de haber sido apercibido de las consecuencias de no actuar cumplidamente, entendemos que no erró el foro apelado en mantener vigente la orden de dar por admitidos el requerimiento de admisiones.

Por los fundamentos antes expuestos, se confirma la determinación del Tribunal de Apelaciones respecto a que el Tribunal de Primera Instancia posee jurisdicción sobre la materia y la determinación de que procede dar por admitidos los requerimientos de admisiones que fueron cursados al Municipio de San Juan. No obstante, se revoca la determinación del tribunal recurrido en cuanto a que no está

parcialmente prescrita la reclamación de la señora Santiago Colón.  Devolvemos los autos al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Felipe Rivera Prudencio, *et al*

    Recurrido

      v.                     CC-2003-520

Municipio de San Juan, *et al*

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 2 de febrero 2007

Por los fundamentos antes expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se confirma la determinación del Tribunal de Apelaciones respecto a que el Tribunal de Primera Instancia posee jurisdicción sobre la materia y la determinación de que procede dar por admitidos los requerimientos de admisiones que fueron cursados al Municipio de San Juan. No obstante, se revoca la determinación del tribunal recurrido en cuanto a la reclamación de la Sra. Norma Santiago Colón. Resolvemos que los daños de ésta son de carácter sucesivo y no continuos por lo que su reclamación está parcialmente prescrita. Devolvemos los autos al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta, inhibida.

                        Aida Ileana Oquendo Graulau
                     Secretaria del Tribunal Supremo