EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Maritza Irizarry<br>        Recurrida<br><br>        v.<br><br>Johnson and Johnson Consumer Products<br>Co., (P.R.), Inc.<br>        Peticionaria | Certiorari<br><br>2000 TSPR 15 |

Número del Caso: CC-1998-0073

Fecha: 27/01/2000

Tribunal de Circuito de Apelaciones: Circuito Regional II

Juez Ponente: Hon. Efraín E. Rivera Pérez

Abogados de la Parte Peticionaria: Bufete Schuster, Usera, Aguiló
                                   & Santiago
                                   Lcdo. Carl Schuster
                                   Lcda. Miriam B. Toledo-David

Abogado de la Parte Recurrida: Lcdo. José Alberty Orona

Materia: Discrimen

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maritza Irizarry

    Recurrida

        vs.                      CC-98-73       CERTIORARI

Johnson and Johnson Consumer
Products Co., (P.R.), Inc.

    Peticionaria

**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 27 de enero de 2000

En agosto de 1991, la Sra. Maritza Irizarry comenzó a trabajar para la compañía Johnson and Johnson Consumer Products Co.,(P.R.)Inc. (Johnson & Johnson), ejerciendo el cargo de Analista de Laboratorio en el Departamento de Control de Calidad de Servicios ("Quality Control"). Alegadamente, antes de comenzar sus labores, médicos del patrono le practicaron un examen médico que reflejó un perfecto estado de salud. En octubre de 1991, alegadamente, se averió una máquina, en el área de trabajo de la Sra. Irizarry, que recoge químicos y gases, y fue sustituida por unos envases de basura(DRONES) sin tapa. A partir de entonces, la salud de la Sra. Irizarry, alegadamente, comenzó a deteriorarse,

diagnosticándosele varias condiciones de tipo respiratorio, supuestamente provocadas por la inhalación de ácidos y solventes en el trabajo.

Al cumplirse los tres (3) meses del periodo probatorio, Johnson & Johnson realizó una evaluación de la labor rendida por la Sra. Irizarry. La Compañía consideró dicha labor como inferior a los estándares de la misma, por lo que elaboró un plan de acción o adiestramiento documentado para ella, por un periodo de tres meses, pudiendo ser separada de su empleo antes de la terminación del mismo si la calidad de su trabajo no mejoraba. A finales de enero de 1992, la Sra. Irizarry fue evaluada nuevamente, y aun cuando se determinó que sus destrezas habían mejorado, ésta no alcanzó el nivel requerido por la Compañía.

Desde el 16 de enero de 1992, luego de varios exámenes médicos, de haber sido diagnosticada con alergia severa, y por recomendación del Dr. Luis M. De Jesús Montes, la Sra. Irizarry se ausentó del trabajo. El 31 de enero de 1992, el Dr. De Jesús Montes expidió un certificado médico recomendando que la Sra. Irizarry se mantuviera fuera del trabajo, por tiempo indefinido, para establecer si su condición estaba relacionada con el mismo. La recurrida declaró que comunicó a su supervisora, Sra. Evelyn Santiago, que iba a reportarse al Fondo de Seguro del Estado por causa del quebranto de salud que le provocaron los ácidos y solventes inhalados. Alegadamente, ésta le respondió que si lo hacía le podía costar su trabajo.

El 6 de febrero de 1992, estando ausente, la Sra. Irizarry fue despedida, entregándosele un cheque por la cantidad correspondiente a la mesada. Ese mismo día, la Sra. Irizarry acudió al Fondo del Seguro del Estado, y luego de haber sido atendida por varios médicos, le fue diagnosticada asma bronquial.

Como consecuencia de lo anterior, el 17 de enero de 1995, la Sra. Irizarry presentó una querella[1], al amparo de la Ley Núm. 2 de 17 de enero de 1961[2], contra su ex-patrono, la compañía Johnson & Johnson. Sin embargo, el 23 de enero de 1995, luego de ser contestada la querella por la Compañía, la Sra. Irizarry desistió sin perjuicio de su reclamación. Ello no obstante, el 22 de febrero de 1995, la Sra. Irizarry presentó una nueva querella. En la misma alegó que el despido se debió a que el patrono discriminó contra ella cuando ella ofreció, o intentó ofrecer, testimonio ante un foro administrativo, esto es, ante el Fondo del Seguro del Estado; que el despido fue injustificado; y que trabajó horas extras sin recibir paga por ello[3].

El patrono contestó la querella, alegando como defensas afirmativas, primero, que la querella no aducía hechos que justificaran la concesión de un remedio en ley, y segundo, que el despido se debía al desempeño deficiente

---

[1] Alegando que Johnson & Johnson discriminó contra ella cuando ésta ofreció o intentó ofrecer testimonio ante un foro administrativo.
[2] 32 L.P.R.A. Sec. 3118 *et seq.*

y a las reiteradas violaciones de las normas de la empresa por parte de la Sra. Irizarry. Posteriormente, Johnson & Johnson solicitó la desestimación sumaria de la querella bajo el fundamento de que acudir al Fondo del Seguro del Estado (Fondo), en solicitud de los beneficios concedidos en la Ley Núm. 45 del 18 de abril de 1935[4] (Ley Núm. 45), no es una "actividad protegida" por la Ley Núm. 115 de 20 diciembre de 1991[5], según enmendada (Ley Núm. 115). Oportunamente, la Sra. Irizarry, presentó oposición a la moción de los querellados, y adujo que por existir una controversia real y sustancial en cuanto a la justa causa del despido no procedía dictar sentencia sumaria.

Presentada la réplica a la moción en oposición a sentencia sumaria y la dúplica a la misma, el Tribunal de Primera Instancia, Sala Superior de Bayamón, dictó sentencia sumaria parcial desestimando las causas de acción de daños, tanto bajo la Ley Núm. 115, como bajo la Ley 80 de 30 de junio de 1976[6], según enmendada. Determinó, además, dicho foro judicial que el despido de la Sra. Irizarry pudo haber constituido una violación al Artículo 5(A) de la Ley Núm. 45 del 18 de abril de 1935[7], pero que por haber sido presentada la querella fuera del plazo de doce (12) meses requeridos por dicha Ley, tampoco ésta quedaba amparada por esta disposición legal.

---

[3] Posteriormente, la querellante desistió de la reclamación de horas extras.
[4]  11 L.P.R.A. sec.1 *et seq*.
[5]  29 L.P.R.A. sec. 194 *et seq*.
[6]  29 L.P.R.A. secs. 185 *et seq*.

En cuanto a la Ley Núm. 115, el foro de instancia acogió el planteamiento de Johnson & Johnson, y concluyó que, según su exposición de motivos, la intención del estatuto era "proteger al empleado que colabora o hace expresiones como parte de una investigación ante cualquier foro administrativo, judicial o legislativo", y que, por tanto, acudir al Fondo para solicitar los beneficios brindados por la Ley Núm. 45 no constituye una "actividad protegida" conforme lo dispuesto por la Ley Núm. 115.

Inconforme, la Sra. Irizarry presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones, el cual revocó la sentencia del foro de instancia, resolviendo que, contrario a la alegación de Johnson & Johnson y lo que sostuvo el Tribunal de Primera Instancia, la Ley Núm. 115 no limita los testimonios o información ofrecida por los empleados únicamente a aquella vertida en el curso de una investigación. Además, el tribunal intermedio apelativo determinó que por existir controversia real sobre el motivo del despido, no procedía la sentencia sumaria.

Por no estar de acuerdo con la actuación del Tribunal de Circuito de Apelaciones, los querellados solicitaron la revisión de la sentencia mediante recurso de *certiorari* ante este Tribunal. Plantean que:

> "Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que cuando un empleado informa al patrono que solicitará, o en efecto solicita, los beneficios del Fondo del Seguro del Estado bajo la Ley Núm. 45 del 18 de abril de 1935, 11 L.P.R.A. § 1 *et seq.*, está intentando

---

[7] 11 L.P.R.A. sec. 1 *et seq.*

ofrecer o prestando testimonio ante un foro administrativo y por consiguiente se entiende como una actividad protegida bajo la Ley Núm. 115 (en adelante "Ley Núm. 115") de 20 de diciembre de 1991, 29 L.P.R.A. § 194 *et seq.*"

Expedimos el recurso; estando en condiciones de resolver el mismo, procedemos a así hacerlo.

I

La parte demandada peticionaria, Johnson & Johnson, sostiene que la actuación de un empleado que informa al patrono que solicitará o, en efecto, solicita los beneficios del Fondo del Seguro del Estado, bajo la Ley Núm. 45, no está incluida dentro de la "actividad protegida" consistente en ofrecer o intentar ofrecer testimonio ante un foro administrativo; de éste tener razón en su planteamiento, ello significaría que el hecho de acudir al Fondo no está entre las actividades cubiertas por la protección de la Ley Núm 115, y que, por tanto, no se podría aplicar la consecuencia jurídica que la misma provee para estos casos de discrimen. En otras palabras, la demandada peticionaria nos insta a que concluyamos, que según la Ley Núm. 115, conocida como Ley de Represalias, ésta únicamente ofrece protección a expresiones realizadas en el curso de una investigación iniciada a requerimiento de un foro administrativo, legislativo o judicial.

-A-

"Es principio cardinal de hermenéutica que '[a]l interpretar una disposición específica de una ley, los

tribunales deben siempre considerar cuales fueron los principios perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener'... Nuestra obligación fundamental en estos casos, es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley..." Emilio Dorante v. Wrangler, res. el 27 de abril de 1998, 98 TSPR 50. (Citas omitidas)

De entrada debemos acudir siempre al texto de la ley, pues cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu. Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Además, hemos sostenido que el texto claro de una ley es la expresión por excelencia de la intención legislativa.(Citas omitidas) Rodríguez Rosa v. Mendez & Co., res. el 18 de marzo de 1999, 99 TSPR 23. Con respecto a las leyes laborales, se ha dicho específicamente que las mismas deben ser interpretadas liberalmente, resolviendo toda duda a favor del obrero, para así cumplir con sus propósitos eminentemente sociales y reparadores. Méndez Orellana v. Fondo del Seguro del Estado, res. el 19 de marzo de 1996, 140 D.P.R. ___ (1996); Santiago v. Kodak Caribbean, 129 D.P.R. 763 (1992).

A la luz de los preceptos antes esbozados, pasemos a examinar el texto de la Ley Núm. 115. La Sección 194(a) de la referida ley establece que:

"[n]ingún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo <u>porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico</u>, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley". (Enfasis suplido.)[8]

Ciertamente, una simple lectura de la disposición antes transcrita, demuestra inequívocamente la claridad y falta de ambigüedad en su contenido; no encontramos nada en la redacción del artículo, que remotamente insinúe, que la intención del legislador, al aprobar la Ley Núm. 115 fuese, proteger únicamente las expresiones realizadas en procedimientos investigativos. Respecto a ello, debemos mantener presente que un tribunal no está autorizado a adicionar a un estatuto restricciones o limitaciones que no aparecen en el texto de una ley. <u>Ramírez de Ferrer</u> v. <u>Juan Mari Bras</u>, res. el 18 de noviembre de 1997, 142 D.P.R. ___ (1997); <u>Román</u> v. <u>Superintendente</u>, 93 D.P.R. 685 (1966). Cuando los términos de un estatuto son claros, y susceptibles de una interpretación inequívoca según el significado común y corriente de sus palabras y su construcción gramatical, los tribunales <u>no</u> deben intercalar palabras ni suplir omisiones al interpretarlo. <u>Pueblo</u> v.

_____

[8] La referida Ley Núm. 115 crea, además, una presunción a favor del trabajador, una vez éste establece que: (1) participó en una actividad protegida, y (2) que fue luego despedido, amenazado o discriminado en su contra en el empleo.

Ortiz Pepín, 105 D.P.R. 547 (1977); Meléndez v. Tribunal Superior, 90 D.P.R. 656, (1964).

Por otro lado tenemos que, respecto al carácter administrativo del Fondo del Seguro del Estado, no ha habido controversia alguna; esto es, las partes en ningún momento han cuestionado ese hecho. Como sabemos, la Ley de Procedimiento Administrativo Uniforme[9], establece que el concepto "agencia" incluye cualquier corporación pública o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico autorizada para emitir decisiones o expedir certificados, permisos, concesiones y privilegios, entre otras funciones.

A base de lo anteriormente expresado, consideramos que, a los efectos de la Ley de Represalias, un testimonio ofrecido ante el Fondo del Seguro del Estado obviamente es uno realizado ante un foro administrativo. Dicha conclusión no dispone de la interrogante que plantea el caso.

-B-

La parte demandada peticionaria, Johnson & Johnson, plantea que la verdadera intención legislativa surge de la Exposición de Motivos de la Ley Núm. 115. Sabido es que la exposición de motivos de un estatuto generalmente recoge el propósito del mismo. En la búsqueda del propósito legislativo de una ley, sin embargo, no nos podemos limitar a examinar su exposición de motivos, sino que debemos

_____
[9]  3 L.P.R.A., sec. 2102

realizar un examen minucioso del historial legislativo de la misma.

El antecedente de la Ley Núm.115 lo encontramos en la Ley Núm. 65 de 3 de julio de 1986 (Ley Núm. 65). Esta ley enmendó la Ley Núm. 80[10], ante, para disponer que, en la determinación sobre si existe justa causa para el despido, no "*se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico...*". La Exposición de Motivos de la Ley Núm. 65 reza:

> "El poder de investigación es inherente a la función legislativa. Este poder es amplio y para llevarlo a cabo la Asamblea Legislativa está investida de autoridad para expedir citaciones para la comparecencia de testigos y producción de documentos.
>
> La política pública vigente y reiterada tienen en una estimación muy alta la protección de los trabajadores en sus empleos. Esta protección se extiende a la comparecencia de trabajadores a distintos foros. Es menester ratificar y confirmar esta protección y que quede clara y patentemente establecida la protección de los trabajadores en sus empleos cuando comparecen ante la Legislatura, foros administrativos y judiciales para colaborar con dichos foros y además se expresen acerca de

---

[10] La Ley 80, ante, conocida como la Ley de Despido Injustificado, provee una indemnización para los empleados contratados por término indefinido que son despedidos sin justa causa. Esta ley define específicamente que es justa causa, Articulo 2, Ley 80, supra, 29 L.P.R.A. sec.185b, y excluye de la definición de "*despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento*". El remedio que tiene el ex-empleado es una indemnización equivalente a un mes de sueldo, más una semana de compensación por cada año de servicio con el patrono. Artículo 1, Ley Núm. 80, supra, 29 L.P.R.A. 185a.

los negocios de sus patronos, sin que ello se considere justa causa para el despido." Véase la Exposición de Motivos de la Ley 65.

Según surge del propio texto de la Ley Núm. 65, y de su Exposición de Motivos, el alcance de este artículo estaba claramente circunscrito a <u>investigaciones relacionadas con el negocio del patrono</u>. Posteriormente, la Ley Núm. 65 fue enmendada por la Ley Núm. 9 de 3 de octubre de 1986, pero la sección antes citada no fue alterada.

En el 1991, se presentó ante la Asamblea Legislativa el P. del S. 987 proponiendo una ley general de represalias y una enmienda al Artículo 2 de la Ley Núm. 80. <u>Originalmente</u>, el P. del S. 987 limitaba la protección contra represalia a "cualquier testimonio, expresión o información <u>en una investigación</u> realizada ante un foro legislativo, administrativo o judicial en Puerto Rico...". Por su parte, la enmienda propuesta al Artículo 2 de la Ley Núm. 80 establecía que no "se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por este, <u>relacionadas con el negocio de su patrono, en una investigación</u>...". Según surge de diversos informes de las comisiones legislativas, y la exposición de motivos del proyecto, el propósito de la Asamblea Legislativa era ampliar la protección del empleado a cualquier información o expresión, no necesariamente relacionada a los negocios de un patrono, pero limitada a las realizadas en el curso de una investigación. Véase, Exposición de Motivos, P. del S. 987 del 20 de febrero de 1991.

Mientras la Asamblea Legislativa evaluaba el P. del S. 987, las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano, previo estudio y consideración del mismo, emitieron un informe, en el cual recomendaron su aprobación, sujeto a varias enmiendas. Entre las enmiendas sugeridas en dicho Informe, se encontraba la eliminación de la frase "en una investigación realizada" de modo que la ley general de represalias leyera "testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico...", y la enmienda al Artículo 2 de la Ley 80 leyera "[t]ampoco se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, ante cualquier foro administrativo, judicial o legislativo en Puerto Rico".

Según surge del mencionado Informe, el propósito de la enmienda era "elimina[r] el requisito de que los testimonios ofrecidos por el empleado sean exclusivamente los vertidos en una investigación. Esta eliminación tiene el efecto de ampliar la protección a testimonios o información ofrecida en cualquier foro bajo cualquier procedimiento". (Enfasis nuestro.) Véase, Informe de la Comisión de lo Jurídico de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. del S. 987, pág.4. Luego de evaluar las recomendaciones de la Comisión de lo Jurídico y de Trabajo y Asuntos del Veterano, la Asamblea Legislativa enmendó el P. del S. 987, conforme a

las enmiendas sugeridas en el Informe, y finalmente, la medida fue aprobada convirtiéndose en la Ley Núm. 115.

A pesar de que, como hemos visto, la enmienda demuestra, con meridiana claridad, una intención de ampliar la protección del empleado contra represalias por parte de su patrono a expresiones hechas dentro de cualquier procedimiento, la parte demandada peticionaria insiste en que, según la Exposición de Motivos de la Ley Núm. 115, ésta solo protege las expresiones hechas por un empleado en el curso de una investigación. La Exposición de Motivos de la Ley 115 Núm. dispone lo siguiente:

> "Es principio fundamental en nuestro sistema constitucional de gobierno que el poder para investigar es inherente a la función legislativa. Dicha facultad investigativa es amplia y está acompañada de la autoridad para expedir citaciones para la comparecencia de testigos y producción de documentos, de manera que sea efectiva y cumpla con el propósito de auxiliar a la Rama Legislativa en su función investigativa.
>
> La política pública vigente tiene en alta estima la protección de los derechos de los trabajadores a distintos foros. Es menester ratificar y confirmar esta política pública y dejar clara y expresamente establecida la protección de los empleos de los trabajadores, tanto de las instrumentalidades del Estado Libre Asociado como del sector privado, cuando comparecen ante la Legislatura o alguna de sus comisiones, y ante foros administrativos o judiciales para colaborar con dichos foros.
>
> Si bien hasta el momento los empleados han tenido cierta protección en el empleo por haber ofrecido información o testimonio, dicha protección ha sido limitada en la medida en que se circunscribe exclusivamente a casos en que el empleado testifique sobre los negocios del patrono, y establece únicamente como remedio la restitución en el empleo y paga retroactiva. Es necesario ampliar esta protección a los efectos de que sea extensiva a información suministrada ante

**el requerimiento de un foro, aún cuando la misma no trate directamente sobre los negocios de un patrono** y para conceder remedios adicionales tales como compensación por daños reales y emocionales y honorarios de abogado..." (Enfasis suplido.)

De una simple lectura de la Exposición de Motivos antes transcrita, observamos que en efecto, la misma hace referencia a la facultad investigativa que posee la Rama Legislativa e indica, en ciertos fragmentos, que se intenta proteger la información suministrada ante el requerimiento de o en colaboración con un foro.

Ello no obstante, de un cuidadoso examen del historial legislativo de la Ley Núm. 115, surge que la **intención original** de la Asamblea Legislativa era crear una ley general de represalias, y al igual que en la Ley Núm. 65, proteger expresiones hechas en el curso de una investigación, y por tal razón, la Exposición de Motivos de P. del S. 987 incorporó casi *ad verbatim,* lo referente a los procesos de investigativos de la Exposición de Motivos de la Ley Núm. 65. Surge, además, que **mediante las enmiendas** al P. del S. 987, en específico la eliminación de la frase "**en una investigación**", la **intención original de la Asamblea Legislativa se amplió**, permaneciendo en su forma original, la Exposición de Motivos de la misma. En conclusión, **el historial legislativo demuestra que la verdadera intención legislativa**, contrario a lo que alega la parte demandada peticionaria, **no surge de su Exposición de Motivos, sino de la propia actuación de la Asamblea Legislativa**.

Por lo tanto, a la luz de las enmiendas realizadas al P. del S. 987 hasta su final aprobación, las normas de hermenéuticas aplicables, el claro texto de la Ley Núm. 115 y su historial legislativo, concurrimos con el Tribunal de Circuito de Apelaciones cuando expone que "la intención del legislador no puede haber sido que la protección que brinda la Ley Núm. 115 a los trabajadores en sus empleos quede supeditada al simple hecho de si es el ente del gobierno el que inicia el procedimiento investigativo en el cual se vierte la información o testimonio por parte del empleado, o si es el empleado el que voluntariamente asiste a la entidad a brindar cierta información y como resultado de ello comienza la investigación". Somos del criterio que la verdadera intención legislativa de la Ley Núm. 115 es proteger al empleado por expresiones vertidas por éste en cualquier procedimiento, y por consiguiente, resolvemos que acudir al Fondo para acogerse a los beneficios de la Ley Núm. 45 es una "actividad protegida" por la Ley Núm. 115.

Por las razones antes expuestas, procede que se dicte Sentencia confirmatoria de la emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional II de Bayamón, el día 24 de diciembre de 1997.


FRANCISCO REBOLLO LOPEZ
                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


**Maritza Irizarry**

    **Recurrida**

    **vs.**                                   **CC-98-73**        **CERTIORARI**

**Johnson and Johnson Consumer**
**Products Co., (P.R.), Inc.**

    **Peticionaria**


SENTENCIA


**San Juan, Puerto Rico, a 27 de enero de 2000**


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional II de Bayamón, a la cual se refiere este caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.


                          Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo