**Bernardo REYES GUADALUPE, et al., Plaintiff,**

**v.**

**CASAS CRIOLLAS, et al., Defendant.**

**Civil No. 07–1459 (GAG/BJM).**

United States District Court, D. Puerto Rico.

Dec. 9, 2008.

*riquenos en Accion v. Hernandez*, 367 F.3d 61, 66–67 (1st Cir.2004)).

Fernando E. Agrait–Betancourt, Fernando E. Agrait Law Office, Orlando H. Martinez–Echeverria, Orlando H. Martinez Law Office, San Juan, PR, for Plaintiff.

Casas Criollas, Inc., Caguas, PR, pro se.

Pedro J. Gomez–Garcia, San Juan, PR, pro se.

### AMENDED OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Plaintiffs Bernardo Reyes Guadalupe ("Mr. Reyes") and his wife, Julia Ines Ramos ("Mrs. Ramos"), bring this action against Casas Criolla, Inc. and Pedro Gómez García ("Mr. Gómez") for damages arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and related claims. Plaintiffs' motion for a default judgment was granted (Docket No. 44) and a default damages hearing was held. (Docket No. 48). At the hearing, Mr. Reyes, Mrs. Ramos, and Dr. Miguel Palacios provided testimony and plaintiffs offered exhibits into evidence. (*Id.*) Defendants did not appear at the hearing. (*Id.*) Plaintiffs filed a post-hearing memorandum of law addressing various legal questions raised by the court concerning the requested damages. (Docket No. 50). The parties have consented to proceed before me. (Docket No. 18).

### BACKGROUND

This case arises from defendants' termination of Mr. Reyes' employment with Ca-

sas Criollas in April 2006. (Docket No. 1). Mr. Reyes was the founder of Casas Criollas, and was its principal stockholder and president until it was sold to a group of investors led by defendant Gomez in June 2005. (*Id.*, ¶ 14). At the time of the sale, Mr. Reyes entered into an employment contract with the company's new owners which provided for a two-year term of employment. (*Id.*, ¶ 15). The following year, defendants notified Mr. Reyes that they were terminating his employment. (*Id.*, ¶ 16). In August 2006, Mr. Reyes filed a charge of employment discrimination on the basis of age with the Equal Employment Opportunity Commission (EEOC). (*Id.*, ¶ 22). One month later, Casas Criollas filed a complaint in state court against Mr. Reyes alleging that he had misappropriated funds from the company (the "state court complaint"). (*Id.*, ¶ 23). Mr. Reyes claims that the state court complaint consisted of false charges and was filed in retaliation for his EEOC complaint. (*Id.*). Plaintiffs brought claims under the ADEA's anti-discrimination and anti-retaliation provisions, Puerto Rico Law 80, Law 100, Law No. 115, breach of contract, and Puerto Rico Article 1802. (*Id.*) The court granted a default judgment on these claims and held a damages hearing. (Docket Nos. 44, 48).

At the hearing, the following exhibits were marked and, unless otherwise noted, admitted into evidence: (1) medical records of Mr. Reyes; (2) medical records of Mrs. Ramos; (3) professional services contract between Casas Criollas and Mr. Reyes, dated June 21, 2005; (4) letter from Carlos H. Raffucci–Caro, Esq. to Mr. Reyes re: Termination of Employment, dated April 13, 2006; (5) letter from Casas Criollas to Department of the Treasury, dated April 30, 2007; (6) Casas Criollas payroll records dated March 3, 2006 through March 24, 2006; (7) Court of First Instance Complaint in *Casas Criollas v. Reyes*, dated January 4, 2007; (8) "Planilla Informativa Sobre Ingresos de Corporaciones de Individuos"[1]; (9) Letter from Puerto Rico Department of Labor and Human Resources to Casas Criollas re: notification of charge of discrimination, dated August 2, 2006.

At the hearing, the witnesses provided testimony about Mr. Reyes' health and emotional problems resulting from his termination and Casas Criollas' filing of the state court complaint, his earnings while employed by Casas Criollas, and Mrs. Ramos's health and emotional problems since the state court filing. Mr. Reyes testified that the termination and alleged retaliation caused him medical problems, for which he was still under treatment. His doctor, Miguel Palacios, testified that Mr. Reyes specifically suffered from headache, backache, chest pain, insomnia, and muscle spasms, for which he prescribed various medications, including muscle relaxants and sleeping pills. Dr. Palacios testified that he had treated Mr. Reyes for high blood pressure and diabetes since 1995, but these other ailments had appeared in mid–2006. Since that time, he had seen Mr. Reyes for more frequent office visits as well as for two or three emergency room visits when Mr. Reyes complained of chest pains. Dr. Palacios explained that diagnostic tests for all of Mr. Reyes's ailments showed normal results, leading him to diagnose that Mr. Reyes's ailments were attributable to stress. Mrs. Ramos provided further testimony that since the state court filing, her husband had been

---

1. Exhibit 8, which was provided only in Spanish, was marked for identification only, used to refresh Mr. Reyes's recollection, and does not form part of the record in this case. *See* D.P.R.R. 10(e) (all Spanish-language documents presented to the court must be accompanied by an English translation).

indignant, melancholic, and complained of physical pain throughout his body.

Mrs. Ramos testified that the state court complaint also had a big impact on her. She suffered from anxiety and depression and continued to cry often. She had received medical treatment for these conditions. Dr. Palacios, who had treated Mrs. Ramos since 1996, testified that in the past few years he had treated her for new conditions of abdominal pain, back pain, insomnia, and anxiety. He had prescribed muscle relaxants, pain medication, Ambien for insomnia, and anxiety medication.

Plaintiffs seek the following amounts and forms of damages: (1) back pay in the amount of $451,954.00, composed of $330,000 for 132 weeks of salary (April 13, 2006–October 24, 2008) at $2500 per week, $30,488.50 reflecting ten percent of profits for year ended December 31, 2005, and $91,465.50 reflecting ten percent of profits for years ended 2006, 2007, and 2008, assuming same level of profit as year ended 2005; (2) front pay in the amount of $505,390.50, composed of $413,925 for 165.57 weeks of salary (September 14, 2008–December 31, 2011) at $2500 per week and $91,465.50 reflecting ten percent of profits for years ended 2009, 2010, 2011; (3) compensatory damages for mental anguish, in an amount plaintiffs ask the court to determine based on testimony heard at the damages hearing, citing cases awarding $100,000 to $300,000 in emotional damages; (4) doubling of damages included in items (1) through (3), pursuant to Puerto Rico Law 100 and Law 115; (5) attorneys' fees in the amount of 25% of damages predoubling, pursuant to Law 100 and Law 115; (6) compensatory damages for Mrs. Ramos's mental anguish, in an amount plaintiffs ask the court to determine based on testimony heard at the damages hearing, citing cases awarding $100,000 to $300,000 in emotional damages. (Docket No. 50).

## DISCUSSION

### I. Standard of Review

A default judgment based on the well-pleaded allegations in a complaint establishes only the defendants' liability, and it is then "incumbent upon the plaintiffs to establish the extent of the damages resulting from the defendant's violations." *Eisler v. Stritzler*, 535 F.2d 148, 153–4 (1st Cir.1976). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Wright, Miller & Kane, *Fed. Prac. & Proc. Civ.3d* § 2688. When the amount of damages are in dispute or are not ascertainable from the pleadings, a district court should hold a hearing after default to determine the amount of the award. *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir.1999).

Before awarding damages here, I must determine the following: (1) whether damages are available under the ADEA for emotional distress; (2) whether there is individual liability under the ADEA and specifically whether Pedro J. Gomez can be held liable for damages here; (3) whether an action unrelated to employment—here, the filing of a civil action in state court—taken subsequent to the termination of employment constitutes retaliation under the ADEA; and (4) whether allegations concerning the two-year term of Mr. Reyes's contract prevents Mr. Reyes from receiving damages beyond that contractual period.

### II. Analysis

#### A. Damages Under ADEA and Puerto Rico Law 100

##### 1. Availability of Damages for Emotional Distress

Mr. Reyes seeks damages for emotional distress, raising the question of whether

such damages are available under either federal or state law. Plaintiffs concede that emotional damages are not recoverable for claims of discrimination under the ADEA. (Docket No. 50). However, plaintiffs argue that such damages are available under Puerto Rico's equivalent statute, Law 100, as well as under the ADEA's anti-retaliation provision.

▮ The First Circuit has said that "it is well-established that the [ADEA] does not allow compensatory damages for pain and suffering." *Collazo v. Nicholson,* 535 F.3d 41, 44 (1st Cir.2008) (citing *Comm'r v. Schleier,* 515 U.S. 323, 326, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (noting unanimity among appellate courts in holding that the ADEA does not permit damages for pain and suffering or emotional distress)). However, in contrast to the ADEA, Puerto Rico Law 100 permits a plaintiff to recover damages for emotional distress. *Sánchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 723 (1st Cir.1994), *García Pagán v. Caribbean,* 122 D.P.R. 193, 1988 WL 580765 (1988). Law 100, 29 L.P.R.A. § 146, is Puerto Rico's "comprehensive employment discrimination statute," which creates a cause of action for age discrimination and various other forms of discrimination. *Sánchez,* 37 F.3d at 723. Therefore, Mr. Reyes may recover damages for emotional distress based on his Law 100 claim.

### 2. Individual Liability

Plaintiffs bring their suit against both Casas Criollas and Mr. Gómez, the main shareholder and chief executive officer of Casas Criollas, and Mr. Reyes's former supervisor. The court must therefore determine whether there is individual liability under state or federal anti-discrimination laws which would permit Mr. Gómez to be held liable for plaintiffs' damages.

The First Circuit has not yet taken a view on whether there is individual liability under the ADEA. *See, e.g., Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 56 n. 6 (1st Cir.2000). Other appellate courts throughout the country, however, have determined that individuals may not be held liable under the Act. *See Berkowitz v. Lockheed Martin Corp.,* Civ. No. 07cv12379–NG, 2008 WL 2782920, at *2 n. 2, 2008 U.S. Dist. LEXIS 54069, at *5–6 n. 2 (D.Mass. July 17, 2008) (collecting cases). Plaintiffs concede that individual liability of supervisors or agents of the employer has not been established under the ADEA, but argue correctly that Mr. Gómez may be found liable under state law.

▮ Courts interpreting Puerto Rico law have found that Law 100 provides for individual liability. *See Reino Sotorrio v. El Hipopotamo, Inc.,* Civ. No. 04–22–2(RLA), 2005 WL 2178797, 2005 U.S. Dist. LEXIS 32993 (D.P.R. Sept. 7, 2005) (citing *Rosario Toledo v. Distribuidora Kikuet, Inc.,* 151 D.P.R. 634 (2000)). Moreover, Puerto Rico Law 115 also provides for personal liability of a supervisor who retaliates against an employee of the company. *Hernández v. Raytheon Serv. Co. P.R.,* Civ. No. 05–1937(CCC), 2006 WL 1737167, 2006 U.S. Dist. LEXIS 28450 (D.P.R. Apr. 26, 2006). Therefore, plaintiffs may recover damages from Mr. Gómez based on their Law 100 claim, and based on their Law 115 claim to the extent the court finds that plaintiffs have stated a claim for retaliation.

### 3. Damages for Retaliation

Plaintiffs seek damages based on the alleged retaliatory actions of defendants. Plaintiffs allege that after Mr. Reyes filed charges against defendants before the EEOC, Casas Criollas retaliated against him by filing a complaint in state court falsely accusing Mr. Reyes of misappropri-

ation of funds. (Docket No. 1, ¶ 23). The court must determine whether these facts adequately state a claim for retaliation under the ADEA.

In a decision concerning Title XII, the Supreme Court held that Title XII's anti-retaliation provision, in contrast to its substantive provisions, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The court noted that an "employer can effectively retaliate against an employee by taking actions not directly related to his employment", including acts of retaliation which occur after an employee has already been terminated. *Id.* (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 987 (10th Cir.1996) (finding retaliation where the employer filed false criminal charges against a former employee who complained of discrimination)). Courts and commentators have agreed that the holding in *Burlington Northern* should be applied to ADEA retaliation claims based on the parallel language in the anti-retaliation provisions of Title VII and the ADEA.[2] *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 211 (2d Cir.2006) (applying *Burlington Northern* standard to ADEA case); Lindemann & Kadue, *Age Discrimination in Employment Law* 33 (2007 Cumulative Supplement) (arguing that *Burlington Northern* holding may be applied to ADEA cases). As one district court explained, the Court's "reasoning concerning the statutory language of Title VII . . . should thus apply equally to the ADEA, which, like Title VII, utilizes the phrase 'compensation, terms, conditions, or privileges of employment,' in connection with

the substantive provision, but utilizes a different phrase ('discriminate against') in connection with the anti-retaliation provision." *McInnis v. Town of Weston*, 458 F.Supp.2d 7, 14 (D.Conn.2006).

 Applying the *Burlington Northern* holding to the case at hand, "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and provides "broad protection from retaliation". *Burlington Northern*, 548 U.S. at 67, 126 S.Ct. 2405. Plaintiffs have alleged that defendants filed a "bogus" lawsuit against Mr. Reyes in retaliation for his filing employment discrimination charges with the EEOC. (Docket No. 1, ¶ 23). Under the *Burlington Northern* standard, these facts adequately state a claim for retaliation and therefore, defendants are liable to Reyes for damages caused by their retaliatory conduct.

 A question remains as to whether plaintiffs have stated a claim for retaliation under Puerto Rico law. The relevant Puerto Rico statute identified in the complaint (Docket No. 1, p. 6) provides, "No employer may discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment" as retaliation for engaging in certain protected activities. 29 L.P.R.A. § 194a. Courts have held that the statute protects only current employees who must show that they suffered an adverse employment action as a result of protected activities: "An employee establishes a prima facie case under Law 115 by proving that (1) he engaged in one of the protected activities set forth in the Whistle-blower Act and (2) he was subsequently

---

**2.** *Compare* anti-retaliation provisions of Title VII, 42 U.S.C. § 2000e–3(a) *with* anti-retaliation provisions of ADEA, 29 U.S.C. § 623(d).

discharged, threatened or suffered discrimination *at work.*" *MVM Inc. v. Rodríguez,* 568 F.Supp.2d 158, 176–177 (D.P.R. 2008) (emphasis added) (citing *Irizarry v. Johnson & Johnson,* 150 D.P.R. 155, 164 (2000)). In this way, the act covers former employees only to the extent that they "were discharged because of an attempt to offer testimony." *Id.* at 177. Law 115 is by its terms more narrow than the ADEA's anti-retaliation provision, which provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . ." because they engaged in protected activities. 29 U.S.C. § 623(d). Therefore, *Burlington Northern*'s expansive reading of federal anti-retaliation law cannot be extended to the more narrow language of Law 115, and plaintiffs here have not stated a claim for retaliation under Puerto Rico law.

### B. Damages Under Article 1802

██ Mrs. Ramos also seeks damages under Article 1802 based on her own mental and moral suffering. (Docket No. 1, ¶ 44). The Puerto Rico Supreme Court has held that the Puerto Rico general tort statute, Article 1802, 31 L.P.R.A. § 5141, provides a cause of action for the family members of individuals suffering employment discrimination. *Santini Rivera v. Serv Air, Inc.,* 137 D.P.R. 1, 1994 P.R.-Eng 909,527 (1994). *See also Marcano–Rivera v. Pueblo Int'l, Inc.,* 232 F.3d 245, 258 n. 8 (1st Cir.2000); *Baralt v. Nationwide Mut. Ins. Co.,* 183 F.Supp.2d 486, 487 (D.P.R.2002). This cause of action arises under Article 1802, not under Law 100. *Baralt,* 183 F.Supp.2d at 488. However, the Article 1802 claim is "derivative" of the discriminated-against individual's Law 100 claim and can only stand if a claim for discrimination has been made out under Law 100. *Marcano–Rivera,* 232 F.3d at 258; *Baralt,* 183 F.Supp.2d at 488. Because Mr. Reyes has adequately stated a

claim under Law 100, as described above, plaintiffs have also stated a claim under Article 1802 for any injuries suffered by Mrs. Ramos as a result of Mr. Reyes's termination. However, plaintiffs have not stated a claim for retaliation under Law 115, and therefore, Mrs. Ramos cannot state a derivative claim under Article 1802 for any damages she may have incurred as a result of the alleged retaliation against her husband.

### C. Damages Calculation

#### 1. Lost Wages

The court must first determine what effect the contract between Mr. Reyes and Casas Criollas has on Mr. Reyes's damages for lost wages. The complaint in this action alleges, "On June 25, 2005, the new owners, retained Mr. Reyes employed as President of Casas Criollas under a contract for a period of two (2) years." (Docket No. 1, ¶ 15). The complaint proceeds to allege that Mr. Reyes was terminated ten months later—within the term of that contract—and does not further reference the term of Mr. Reyes's employment. Significantly, the complaint does not allege that Mr. Reyes was employed for an indefinite term, that the contract did not govern the parties' relationship, that the contract had been or would be renewed, or any other fact alleging that Mr. Reyes would be employed by Casas Criollas for any period longer than the two-year contract term described in paragraph fifteen.

██ Plaintiffs contend, however, that this concern is eliminated by defendants' statement in their Answer, in responding to plaintiffs' breach of contract cause of action, that "[i]t is affirmatively alleged that at the time of his dismissal, plaintiff Reyes was an employee of indefinite time of Casas Criollas, thus the professional services contract between Reyes

and Casas Criollas was no longer in effect." (Docket No. 9, ¶ 41). This argument cannot change the allegations of plaintiffs' own complaint. While "a party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated," *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n. 3 (1st Cir.1999), a defendant is deemed only to be prevented from "disputing the truth of the well-pleaded facts in the complaint." *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 76 (1st Cir. 2001). Moreover, defendant's affirmative defense to plaintiffs' breach of contract claim cannot amend or add allegations to plaintiffs' complaint which plaintiffs themselves neglected to plead. Thus, focusing on the well-pleaded allegations of the complaint, the complaint alleges that defendants' termination of Mr. Reyes deprived him of salaries he expected and was owed for the remainder of his contractual period.

Therefore, I find that the damages award for back-pay and front-pay should be limited to those salaries Mr. Reyes would have received under the period of the contract. The contract provides Mr. Reyes with a weekly salary of $2,500 and an annual payment of ten percent of the company's net profits. (Ex. 3). Mr. Reyes was terminated effective April 13, 2006. (Ex. 4). The contract states that it terminates on June 20, 2007. (Ex. 3). Therefore, defendants are liable to Mr. Reyes for 61.5 weeks of salary, amounting to $153,750.

Defendants are also liable to Mr. Reyes for ten percent of profits for 2006, and a pro-rated portion of ten percent of 2007 profits. Mr. Reyes testified that the company's net profits for 2005 were $304,886. Due to defendants' failure to participate in discovery in this case, plaintiffs do not know the amount of the company's 2006 and 2007 profits, and ask the court to assume that the profits in those years were the same as those in 2005. Defendants are thus liable to Mr. Reyes for 10 % of the assumed–2006 profits, or $30,488.60 and 29 % of this amount for the fifteen weeks of Mr. Reyes's contract in 2007, or $8,841.65.

Therefore, defendants are liable to Mr. Reyes for lost wages, including a share of profits, totaling $190,080.25.

### 2. Damages for Emotional Distress

#### a. Mr. Reyes

Plaintiffs, pointing to cases granting awards of $100,000 to $300,000 for emotional damages, argue that they are entitled to an amount within that range. In *Koster v. TWA,* one of the First Circuit's most extensive discussions of emotional damages, the Court of Appeals ordered the district court to reduce a jury award of $700,000 in emotional damages to a maximum of $250,000. 181 F.3d 24, 35 (1st Cir.1999). The court held that the award was "grossly disproportionate to the evidence of emotional distress" and "excessive as a matter of law" where "[t]here was no evidence that Koster ever sought medical treatment or suffered any long-term depression or incapacitation." 181 F.3d at 36. The evidence in *Koster* consisted of testimony that Koster suffered from anxiety, had difficulty sleeping at night, and suffered from heartburn. *Id.* at 29. The parties did not provide expert testimony, and the court held that "although emotional damages are warranted even without medical or psychiatric evidence, the lack of such evidence is relevant to the amount of the award." *Id.* at 35.

The First Circuit has also found appropriate pain and suffering damages awards ranging from $37,500 to $300,000. *Sánchez v. Puerto Rico Oil Co.,* 37 F.3d 712,

723 (1st Cir.1994) (upholding award of $37,500, in the absence of expert testimony, where plaintiff testified that job loss stripped him of livelihood and dignity and drove him into bankruptcy); *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 18 (1st Cir. 2005) (reducing award from $500,000 to $100,000 for mother of plaintiff shot twice in the leg by police officers where she testified that she was too distraught to work for a month); *Muniz–Olivari v. Stiefel Labs., Inc.*, 496 F.3d 29, 40 (1st Cir. 2007) ($100,000 awards to both improperly terminated man and his wife not excessive where husband testified to shock and feeling of losing everything he had and wife testified that she became depressed and preoccupied about their difficult financial situation); *Rodríguez–Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 63 (1st Cir.2005) (relying on *Koster*, affirming $250,000 award where improperly terminated employee testified that her life changed "drastically," marriage suffered, and deep depression prevented her from finding subsequent employment for "quite some time"); *McDonough v. City of Quincy*, 452 F.3d 8, 21 (1st Cir.2006) (affirming $300,000 award, bulk of which was for emotional damages, where improperly terminated man testified that job loss caused substantial humiliation, damage to reputation, and substantial harm to relationships with family members). *See also Toro Cotto v. Liga Puertorriquena Contra El Cancer*, Civ. No. 04–1285(HL), 2007 WL 527661, 2007 U.S. Dist. LEXIS 10434 (D.P.R. Feb. 14, 2007) (jury award of $400,000 in damages not excessive where ADA plaintiff whose medical condition was not accommodated testified that her condition deteriorated and she suffered from depression, anxiety, difficulty sleeping, loss of appetite, and family relationships suffered).

■ Testimony by Mr. Reyes, his doctor, and his wife demonstrate that, following his termination, he suffered from headache, backache, chest pain, insomnia, and muscle spasms, for which he was treated with various medications, including muscle relaxants and sleeping pills. During this period, Mr. Reyes was admitted to the emergency room on two or three occasions complaining of chest pains. His doctor performed a series of tests and concluded that his chest pains and other ailments were attributable to stress. In cases dealing with similar injuries, courts have upheld awards ranging from $37,000 to $400,000. Based on this precedent, and because Mr. Reyes's asserted injuries are not as severe as in some of the cases at the higher end of the range, I find $100,000 in emotional damages to be an appropriate award.

#### b. Mrs. Ramos

■ Mrs. Ramos did not testify that her injuries were caused by her husband's termination but instead, that her injuries were caused by being named herself in the state court complaint. Specifically, she testified that she suffered from anxiety and depression and received medical treatment for these conditions. Counsel for plaintiffs questioned Mrs. Ramos, "As a result of your husband's termination, you were included ... in a complaint in state court.... What effect, if anything, did that have you on?" All of Mrs. Ramos's testimony concerning her medical conditions flowed from that question. When asked following her testimony for the reasons why she felt that way, she responded only that her conditions resulted from the accusations Casa Criollas had made against her and her husband. Further, when asked about the cause of Mrs. Ramos's stress, Dr. Palacios testified that she had mentioned being falsely accused of stealing a sum of money.

Because Mrs. Ramos's injuries were not caused by her husband's termination, the

court may not award her damages based on defendants' liability under the ADEA or Law 100. Moreover, as discussed above, plaintiffs have not stated a claim for retaliation under Puerto Rico's Law 115. As a result, Mrs. Ramos cannot state a derivative claim under Article 1802 for any damages she may have incurred as a result of the alleged retaliation against her husband. Although, Mr. Reyes has stated a retaliation claim under federal law, federal law does not recognize the right of an employee's spouse or family member to bring a derivative claim based on the employee's ADEA claim. *Flamand v. American Int'l Group*, 876 F.Supp. 356, 372 (D.P.R.1994). Therefore, the evidence in the record does not support a finding of damages for Mrs. Ramos.

## CONCLUSION

The court orders defendants, jointly and severally, to pay the following amounts of damages:

(a) $190,080.25, reflecting Mr. Reyes's back wages;

(b) $100,000, reflecting Mr. Reyes's compensatory damages;

(c) An additional $290,080.25, reflecting a doubling of the back wages and compensatory damages award under Puerto Rico Law 100[3]; and

(d) $72,520.06, reflecting attorneys' fees calculated at twenty-five percent damages, pre-doubling, pursuant to Puerto Rico Law 100[4].

Therefore, the total amount of defendants' liability to plaintiff is **$652,680.56.** Judgment will be entered in this amount.

**IT IS SO ORDERED.**

---

**3.** *See* 29 L.P.R.A. § 146(a)(1).

**4.** *See Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 734 (1st Cir.1999).